# EXHIBIT 30

# EXHIBIT 30

Cecilia Mangaoang
2901 Capewood Lane
San Jose, CA 95132-1108
(408) 876-9950



# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### DOWNTOWN SUPERIOR COURT

|  |  |
|---|---|
| Cecilia Mangaoang, | Case No. _____ |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | **Quiet Title,** |
| | **Rosenthal Act (C.C.C. 1788),** |
| SPECIAL DEFAULT SERVICES, INC.; | **Cancellation of Instrument,** |
| TRINITY FINANCIAL SERVICES, LLC; | **Wrongful Foreclosure** |
| NEWPORT BEACH HOLDINGS, LLC; | **UNLIMITED CIVIL CASE** |
| Does # 1-10, inclusive, | **[DEMAND EXCEEDS $25,000.00]** |
| Defendants. | **[ Injunctive Relief Requested ]** |

## PRELIMINARY NOTES

1. **Plaintiff requests an immediate injunction, enjoining Trinity from prosecuting** eviction (forcible entry / unlawful detainer) lawsuit #18CV339119, and from reporting negative information to any credit bureau pending resolution of this case.

2. **Plaintiff intends to move to consolidate this case with** eviction (forcible entry / unlawful detainer) lawsuit #18CV339119.

3. In the pending Bankruptcy case #18-52245, Appellant/Debtor there (Plaintiff here) filed

VERIFIED COMPLAINT

1

a motion to extend the automatic stay; that motion was denied on November 2, 2018.[1] Then on November 5, 2018, the foreclosure sale was held, even though Plaintiff here (Debtor there) had no opportunity to object to the Order denying motion to extend the automatic stay. In addition, "the stay that terminates under § 362(c)(3)(A) is not the stay that protects property of the estate." Therefore, the foreclosure sale is unlawful, invalid and void.[2]

    4. The Deed does not provide for, nor allow, any removal or substitution of trustee.

    5. MERS has no authority to nonjudicially foreclose under the Deed under its express terms. (MERS would also not qualify as one entitled to payment under §2923.5, since it does not hold the note.) The provisions of CC §2924(a)(1), allowing agents to foreclose, do not trump the requirement of CC §2923.5, that assignments must be recorded before foreclosures start. See In re Salazar, 10-17456-MM13 in the United States Bankruptcy Court, Southern District of California (2011)(" US Bank [as Trustee]'s failure to record its beneficiary status before foreclosure left Salazar with equitable title to his residence."). Here, no Defendant has recorded any beneficiary status.

    6. "[B]ecause MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the . . . assignment of mortgage is a nullity, and MERS was without authority to assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose." (Bank of New York v Silverberg, AD3d, 2011 NY

---

[1] That order is on appeal in Bankruptcy Appellate Court case #18-1309.

[2] "The court notes that the automatic stay is not terminated in its entirety. Although §362(c)(3) provides for the termination of stay, its effect is limited in application to actions taken against the debtor and against property of the debtor. In re Jones, 339 B.R. 360, 365 (Bankr. E.D.N.C. 2006). As this court has previously held, termination of the automatic stay under §362(c)(3) does not apply to actions taken against property of the estate. Id. ("It is abundantly clear from the plain language of § 362(c)(3)(A) that the stay that terminates under that section is not the stay that protects property of the estate."). See also In re Johnson, 335 B.R. 805, 806 (Bankr. W.D. Tenn. 2006) ("[T]he plain language of § 362(c)(3)(A) dictates that the 30-day time limit only applies to 'debts' or 'property of the debtor' and not to 'property of the estate.'")." In re: Burnette, Case No. 09-00699-8-JRL (E. D. N. Carolina, Chapter 13)

VERIFIED COMPLAINT

2

Slip Op 05002 [June 7, 2011]).

7. Defendants failed to notify or initiate contact with Plaintiff to discuss available options prior to the recording of the Notice of Default in violation of California Civil Code Section 2923.5.

8. Defendant Trinity failed to record any Notice of Default.

9. Defendants failed to provide a copy of the Notice of Default after recording it in violation of Civil Code Sections 2923.5 and 2924.

10. Defendants also failed to provide a copy of the Substitution of Trustee after it was recorded in violation of California Civil Code 2924.

11. MERS did not have authority, as 'nominee' or agent, to assign the mortgage absent a showing that it was given specific written directions by its principal. No such written directions ever existed.

12. The United States Bankruptcy Court for the Eastern District of California has issued a ruling dated May 20, 2010 in the matter of In Re: Walker, Case No. 10-21656-E-11 which found that MERS could not, as a matter of law, have transferred the note to Citibank from the original lender, Bayrock Mortgage Corp. The Court's opinion is headlined stating that MERS and Citibank are not the real parties in interest. The court found that MERS acted "only as a nominee" for Bayrock under the Deed of Trust and there was no evidence that the note was transferred. The opinion also provides that "several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose on the property secured by the deed", citing the well-known cases of In Re Vargas (California Bankruptcy Court, 396 B.R. 511 (Bankr. C.D. Cal. 2008)), Landmark v. Kesler (Kansas decision as to lack of authority of MERS, 216 P.3d 158, 166-67 (Kan. 2009)), LaSalle

VERIFIED COMPLAINT

3

Bank v. Lamy (New York, 824 N.Y.S.2d 769, 2006 WL 2251721, at *1 (N.Y. Sup. Ct. Aug. 7, 2006)), and In Re Foreclosure Cases (the "Boyko" decision from Ohio Federal Court, 521 F.Supp.2d 650 (S.D.Ohio 2007)). The opinion states: "Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer to Citibank. Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law."

13. The Note and Mortgage were severed or bifurcated at the closing table with the Mortgage being recorded in the name of MERS as "nominee" for the original lender. However, the original lender never actually loaned any money to the homeowner. The original lender was never owed or paid any money under the terms of the Note. There the Mortgage sat for years in the name of an entity, MERS, for which the homeowner owed no money and which would never be beneficiary under the Note.

## *THE FTB SUSPENSION*

14. On 8/13/2003, Aidan was incorporated in California.

15. On 7/2/2012, Aidan's corporate entity was suspended by the Franchise Tax Board (FTB) and no longer licensed to operate in California. See Exhibit A.

16. On 7/21/2015, MERS as nominee of Aidan purportedly assigned the DOT to Newport Beach Holdings, LLC ("First Corporate Assignment").

17. On 8/24/2018, Newport Beach Holdings, LLC ("Newport Beach") purportedly assigned the DOT to Trinity Financial Services, LLC ("Second Corporate Assignment").

4

18. On 9/09/2016, SDS unlawfully recorded a Substitution of Trustee ("SOT"), bearing the signature of Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of Newport Beach. Don A. Madden, Jr. was never an officer, employee or agent of Newport Beach, and was not authorized to sign the SOT. Therefore, SDS is not a valid substitute trustee.

19. On 9/09/2016, SDS unlawfully recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD").[3]

20. On 9/6/2018, Special Default Service recorded a Notice of Trustee's Sale ("NOTS").

21. On 11/15/2018, SDS recorded as 24064356 a Trustee's Deed Upon Sale ("Trustee's Deed"),

22. The First Corporate Assignment and the Second Corporate Assignment could not have occurred and were thus void or voidable and transferred no interest. At each step, only the entity holding the beneficial interest under the DOT (either the original lender or the assignee or agent thereof) may assign that interest, and only that entity may instruct the trustee to commence and complete a nonjudicial foreclosure. Here, since both Corporate Assignments were void or voidable, the entity holding the beneficial interest under the DOT was either the original lender (AIDAN WEST FINANCIAL GROUP) or an agent thereof, but was certainly not any of the Defendants.

23. The Deed does not bear Plaintiff's signature.

24. MERS could not act as nominee for non-member AIDAN WEST FINANCIAL

---

[3] SDS had not been lawfully appointed because on the date of the First Corporate Assignment to Newport Beach, namely 7/21/2015, AIDAN WEST FINANCIAL GROUP had a status of "Suspended FTB" by the Franchise Tax Board (and Newport Beach Holdings, LLC did not exist at that time, as it registered as a Nevada corporation, California secretary of state #201615410070, and began existing, on 6/1/2016).

VERIFIED COMPLAINT

GROUP ("Aidan West")(the "Lender"). Therefore, the Deed is void or voidable and could not be used as a reason to sell the Property.

25. On the date of the First Corporate Assignment to Newport Beach, namely 7/21/2015, AIDAN WEST FINANCIAL GROUP had a status of "Suspended FTB" by the Franchise Tax Board.[4] Therefore, Aidan West could not transact business, and in particular MERS as nominee of Aidan West could not validly, legally, lawfully assign the DOT to Newport Beach Holdings, LLC.

26. AIDAN WEST FINANCIAL GROUP has had a status of "Suspended FTB" by the Franchise Tax Board since 7/2/2012.

27. The most recent document filed by AIDAN WEST FINANCIAL GROUP with the California Secretary of State was on 6/7/2007.

28. The law allows any party to the contract other than the suspended taxpayer to assert contract voidability. Plaintiff hereby asserts contract voidability.

29. On its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC. Therefore, Special Default Services, Inc. was never validly, legally, lawfully

---

[4] A corporation whose powers have been suspended for non-payment of the corporate franchise tax lacks capacity to sue in California courts; and, if sued, it lacks capacity to defend. See Revenue & Taxation Code § 23301, 23302, 23301.5, 23775.

A corporation that has been suspended due to its failure to file the biennial statement required by Corporations Code § 1502 lacks capacity to sue or defend itself.

Any person that is claiming to exercise the rights and powers of a suspended corporation which can include an attorney who appears on its behalf—is guilty of a misdemeanor. See Revenue & Taxation Code § 19719.

An attorney who knowingly represents a suspended corporation and conceals this fact from the court may be subject to sanctions.

During the period of time that a corporation is suspended for failure to pay taxes, it may not prosecute or defend an action, appeal from an adverse judgment, or seek a writ of mandate.

A suspended corporation may be sued. Service of process is perfected in the same manner as upon a corporation that is not suspended. A default judgment may be entered upon its failure to respond. See Code of Civil Procedure §§ 416.10, 416.20; Grell v. Laci Le Beau Corp., (1999) 73 Cal.App. 4th 1300, 1306—statute of limitations not tolled for

substituted as Trustee and could not sell the Property.

30. Defendants failed to comply with any of the conditions precedent set forth in paragraph 22 of the subject Deed of Trust.

31. There were multiple violations of Cal.Civ.Code §2923.3 and §2923.5 and §2924.

32. Trinity (the purported Creditor and purchaser at the sale) purchased with a Credit Bid, yet Trinity was not the present beneficiary of the Deed, in violation of Cal. Civ. Code § 2924h(b).

33. At all relevant times, Trinity and Newport Beach are not registered with the Nationwide Mortgage Licensing System and do not have a bond or a Residential Mortgage Lending Act License,[5] nor a license under the California Finance Lenders Law or California Real Estate Law.

## PARTIES

### *PLAINTIFF*

34. Cecilia Mangaoang is a citizen of California.

### *SPECIAL DEFAULT SERVICES, INC.*

35. Defendant Special Default Services, Inc. ("SDS") is a California corporation, and can be served via its Registered Agent, MARISOL NAGATA, address 17100 GILLETTE AVENUE, IRVINE CA 92614.

36. SDS foreclosed on more than 175 homes during the reporting year prior to 11/8/2018, the date of the purported foreclosure sale.

37. At all relevant times, SDS purported to act as Trustee.

38. At all relevant times, SDS purported to be an agent of Newport Beach.

### *TRINITY FINANCIAL SERVICES, LLC*

---

either party while corporate powers are suspended.
[5] This license is required for any company or person who makes or services residential mortgage loans in California.

VERIFIED COMPLAINT

39. Defendant TRINITY FINANCIAL SERVICES, LLC ("Trinity") is a Wyoming limited liability corporation, with head office at 1621 CENTRAL AVE CHEYENNE WY 82001, and another office at 2618 SAN MIGUEL DRIVE, SUITE 303, NEWPORT BEACH, CA 92660, and can be served at:

> TRINITY FINANCIAL SERVICES, LLC
> c/o RICARDO OROZCO, Registered Agent
> 1220 S ST STE 150
> SACRAMENTO CA 95811

*NEWPORT BEACH HOLDINGS, LLC*

40. Defendant NEWPORT BEACH HOLDINGS, LLC ("Newport Beach") is a Nevada corporation (E0091212011-1, NV20111113607), with offices at 2618 San Miguel Dr, Ste 319, Newport Beach, CA 92660, and can be served at:

> NEWPORT BEACH HOLDINGS, LLC
> c/o INCORP SERVICES, INC., Registered Agent
> 3773 HOWARD HUGHES PKWY STE 500S
> LAS VEGAS, NV 89169-6014

41. Newport Beach Holdings, LLC registered as a Nevada corporation, California secretary of state #201615410070, and began existing, on 6/1/2016.

42. NEWPORT BEACH HOLDINGS, LLC claims to be the Creditor.

43. NEWPORT BEACH HOLDINGS, LLC is merely the servicer, and not the owner, of the loan.

44. NEWPORT BEACH HOLDINGS, LLC does not own any Note encumbering the Property.

45. At all relevant times, NEWPORT BEACH HOLDINGS, LLC was not registered to do business in California.

VERIFIED COMPLAINT

*DOES #1-10*

46. The Doe defendants #1-10 have some claim to ownership or possession of evidence of purported debt allegedly secured by the Property, or conspired with the other Defendants, or defamed Plaintiff.

47. All Defendants are jointly and severally liable.

## FACTUAL ALLEGATIONS

48. All the following allegations are intended to be "without limitation" and will be supplemented by other facts to be found in discovery.

*OWNERSHIP AND POSSESSION*

49.     Plaintiff is the owner of, and domiciled at, the property located at 2901 Capewood Lane, San Jose, CA 95132-1108, legally described as:

> ALL OF LOT 436, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, 'TRACT NO. 3465 NORTHWOOD PARK UNIT NO. 4', WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON JUNE 28, 1963, IN BOOK 163 OF MAPS, PAGES 22 AND 23.
>
> EXCEPTING THEREFROM THE UNDERGROUND WATER RIGHTS WITH NO RIGHT OF SURFACE ENTRY AS CONVEYED TO SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION BY INSTRUMENT RECORDED DECEMBER 10, 1963 IN BOOK 6302 OF OFFICIAL RECORDS, AT PAGE 467.
>
> APN : 092-11-091

(hereafter "the Property").

50.     The Property is, and at all relevant times was, an owner-occupied residential real property containing no more than four dwelling units.

VERIFIED COMPLAINT

9

51.     The Property is located in a judicial district of California under the 1849 Constitution.

52.     The Property is not located in territory owned by or subject to the exclusive legislative jurisdiction of the United States of America.

53.     The Property is not located within the Federal Housing Act area where Congress has exclusive legislative jurisdiction (Art I Sec 8 Clause 17; Art 4 Sec 3 Clause 2).

54.     The Property is not located within any place that has been ceded to the Federal Government by act of the California Legislature. See 40 U.S.C. § 255. Therefore, the purported loans were made in violation of the Federal Housing Act and the Deeds of Trust should be cancelled.

55.     Plaintiff is, and has been since on or about January 18, 2007, in continuous possession of the Property.

56.     Plaintiff has did not make a forcible entry into the Property.

57.     Plaintiff is not unlawfully holding the possession of the Property by force.

58.     Plaintiff and Defendants do not have a landlord-tenant relationship.

59.     Plaintiff has never sold the Property.

60.     Plaintiff has never intended to irrevocably grant or convey the Property to any party.

61.     Plaintiff has never been served with any Notice of Trustee's Sale.

## THE DEED TO PLAINTIFF

62.     On 1/18/2007, Betty C. Chen recorded with the Santa Clara County Recorder, as Document #19268023, a GRANT DEED dated 1/8/2007, conveying the Property to Plaintiff.

VERIFIED COMPLAINT

*THE DEED OF TRUST*

63.     On 1/18/2007, AIDAN WEST FINANCIAL GROUP recorded with the Santa Clara County Recorder, as Document #19268026, a DEED OF TRUST ("Deed") dated 1/9/2007.

64.     The Deed is a first-position lien. At all relevant times, the Deed was the most senior mortgage or deed of trust on the Property, in other words no mortgage or deed of trust on the Property, that was valid and legal and lawful, and that was more senior than the Deed, existed. Any and all prior lien(s) are fatally defective and void, for lack of signature, alteration, payoff/satisfaction, discharge, lack of debt, and other reasons.

65.     The Deed does not bear Plaintiff's signature.

66.     The Prepayment Rider to the Deed does not bear Plaintiff's signature.

67.     The Deed does not contain any definition section.

68.     The Deed does not provide for, nor allow, any removal or substitution of trustee.

69.     MERS has no authority to nonjudicially foreclose under the Deed under its express terms. (MERS would also not qualify as one entitled to payment under §2923.5, since it does not hold the note.) The provisions of CC §2924(a)(1), allowing agents to foreclose, do not trump the requirement of CC §2923.5, that assignments must be recorded before foreclosures start. See *In re Salazar*, 10-17456-MM13 in the United States Bankruptcy Court, Southern District of California (2011) ("US Bank [as Trustee]'s failure to record its beneficiary status before foreclosure left Salazar with equitable title to his residence."). Here, no Defendant has recorded any beneficiary status.

70.     "[B]ecause MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the . . . assignment of mortgage is a nullity, and

MERS was without authority to assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose." (*Bank of New York v Silverberg*, AD3d, 2011 NY Slip Op 05002 [June 7, 2011]).

71.     The Deed states:

THIS DEED OF TRUST is made this JANUARY 9, 2007, among the Trustor, CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY (herein "Borrower"), FIDELITY NATIONAL TITLE [address] (herein "Trustee"), and AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA [address] (herein "Lender").

WHEREAS, this Security Instrument is given to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), as beneficiary, which is acting solely as nominee for Lender (as hereinabove defined) and Lender's successors and assigns.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated JANUARY 9, 2007, and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $131,000, with interest... [Note: The interest rate was never specified.]

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record

72.     The Deed does not contain a definitions section, however it refers to "Borrower's note dated JANUARY 9, 2007, and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $131,000, with interest..." (hereafter referred to as "Note")

73.     Plaintiff did not sign any Note dated JANUARY 9, 2007.

74.     Plaintiff has never signed any Note stating that Plaintiff owes AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

75.     Plaintiff has never signed any Note in the principal sum of $131,000.

12

VERIFIED COMPLAINT

76.    Plaintiff did not draft the Deed.

77.    Plaintiff does not know who drafted the Deed.

78.    "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a member of MERS.

79.    "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a nominee of MERS.

80.    Therefore, the Deed lacks a beneficiary. Therefore, the Deed is void or voidable and should be cancelled.

81.    As of 1/9/2007, Plaintiff was never "seised" of the Property.

82.    Plaintiff has never agreed to "defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."

*THE ALLEGED LOAN*

83.    Defendants claim that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION lent money to Plaintiff.

84.    Defendants claim that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION lent credit to Plaintiff.

85.    Plaintiff did not receive a loan of money from AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

86.    Plaintiff did not receive a loan of credit from AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

VERIFIED COMPLAINT

13

87.     Each of the Notes alleged by Defendants (hereafter "each Note") is not a negotiable instrument under UCC 3.104 because the "promise to pay" is governed by other, separate documents and is therefore not unconditional.

88.     Each Note is not a negotiable instrument under UCC 3.104 because the total amount to pay includes interest which will change and therefore is not a sum certain.

89.     Each Note is not a negotiable instrument under UCC 3.104 because it is not "payable on demand or at <u>a</u> definite time" because it is payable in monthly installments.

90.     Any Defendants who took any Note encumbering the Property had notice of all, each and every defense(s) to it, including but not limited to: Fraud in the execution (this occurs when a person is deceived into signing a negotiable instrument believing that he is signing something other than a negotiable instrument); Material alteration; Discharge in bankruptcy; Breach of contract or breach of warranty; Lack or failure of consideration; Fraud in the inducement.

91.     No Defendant was ever owner nor holder of any Note encumbering the Property.

92.     All Defendants' General Ledger accounting entries show that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION did not lend money.

93.     All Defendants' General Ledger accounting entries show that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION did not lend credit.

94.     Plaintiff never owed the amount(s) claimed by Defendants.

95.     The purported Trustee was not notified that it was named as Trustee and therefore could not exercise its powers and had no powers and was not in in any practical sense a Trustee.

96.     No Note bearing Plaintiff's signature was conveyed from any Defendant to any

other Defendant.

97.   No Note bearing Plaintiff's signature was delivered from any Defendant to any other Defendant.

98.   No Note bearing Plaintiff's signature was negotiated from any Defendant to any other Defendant.

99.   No Defendant was a bona fide purchaser for value of any Note encumbering the Property.

100.   No Defendant ever held any Note encumbering the Property, or such Note has been lost or stolen or destroyed or cancelled or further assigned.

101.   Within 30 days after the date on which any Note or Loan encumbering the Property was sold or otherwise transferred or assigned to a new party, the creditor that was the new owner or assignee of the debt DID NOT notify Plaintiff in writing of such transfer. (See 131 of the Truth in Lending Act (15 U.S.C. 1641).)

102.   Any Note encumbering the Property was pledged as collateral for other secured transactions.

103.   As part of the purported transaction, a national bank lent its credit, directly or indirectly.

104.   No Defendant paid any value for any Note encumbering the Property.

105.   No Defendant acquired in good faith any Note encumbering the Property.

### THE BREAK IN CHAIN OF TITLE

106.   There is no chain of title from Plaintiff to any Defendant.

### SECTION 22 WAS NOT COMPLIED WITH

VERIFIED COMPLAINT

15

107. Defendants failed to comply with any of the conditions precedent set forth in paragraph 22 of the Deed.

108. The purported Trustee has never been informed of the existence of the Deed.

## *SERVICING VIOLATIONS*

109. The purported servicer, NEWPORT BEACH HOLDINGS, LLC, did not credit all payments to Plaintiff's account.

110.   The authenticity of, and authority to make, each signature on any purported Note is hereby specifically denied.

## *THE FIRST CORPORATE ASSIGNMENT OF DEED OF TRUST*

111. On 12/17/2015, RICHARD MONROE/TARA NEWTON recorded as 23175056 a CORPORATE ASSIGNMENT OF DEED OF TRUST ("First Corporate Assignment"), dated 7/21/2015 and purportedly signed on 7/21/2015 by Robert Madden as Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and purportedly notarized on 7/21/2015 in Orange, California by Thanh Vo.

112. The First Corporate Assignment states:

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS, whose address is P.O. BOX 2026, FLINT, MI 48501-2026 hereby grants, assigns and transfers to Newport Beach Holdings, LLC, at 2618 San Miguel Drive, Suite 319, Newport Beach, CA 92660 all beneficial interest under that certain Deed of Trust dated 1/9/2007, in the amount of $131,000.00, executed by CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 1/18/2007 ... as Instrument No.: 19268026 in Santa Clara County, State of California and all rights accrued or to accrue under said Deed of Trust.

113. On the date of the First Corporate Assignment to Newport Beach, namely 7/21/2015, AIDAN WEST FINANCIAL GROUP had a status of "Suspended FTB" by the Franchise Tax Board. Therefore, Aidan West could not assign any loans on that date.

114.   As of 7/21/2015 (the purported signature date of the First Corporate Assignment), and as of 12/17/2015 (the recording date of the First Corporate Assignment), Newport Beach Holdings, LLC did not exist. Therefore, Newport Beach could not receive any assignment of any loan on that date.

115.   There was no "Value Received."  Newport Beach Holdings, LLC did not pay any consideration to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS for the First Corporate Assignment.

116. The First Corporate Assignment does not state "together with the Note."

117. No Note was assigned, negotiated, given, bargained, transferred or conveyed together with the First Corporate Assignment.

118. No Beneficial Interest was assigned, negotiated, given, bargained, transferred or conveyed together with the First Corporate Assignment.

**Signer**

119. Robert Madden was never Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

120. Robert Madden failed to verify the chain of title before signing the First Corporate Assignment.

121.   Robert Madden signed the First Corporate Assignment without review of any

VERIFIED COMPLAINT

information or documentation.

122.   On 7/21/2015, and at all times, Robert Madden was not authorized to sign the First Corporate Assignment.

123.   The First Corporate Assignment was not signed by a duly authorized corporate officer.

124.   There is no corporate resolution or other document appointing Robert Madden as Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

125.   There is no corporate resolution or other document directly or indirectly granting authority to Robert Madden to sign the First Corporate Assignment.

126.   There was never any decision made by the Board of Directors of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. directly or indirectly granting authority to Robert Madden to sign the First Corporate Assignment.

127.   Beyond the signing of Deeds, Robert Madden has no powers, authority or duties as an Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

128.   In the alternative and without waiving the foregoing, Robert Madden did not sign the First Corporate Assignment; someone else did using that name.

### Notary

129. The First Corporate Assignment was purportedly notarized on 7/21/2015 in Orange, California by Thanh Vo.

130. Thanh Vo was not a notary of California.

131. Robert Madden did not sign in the presence of Thanh Vo.

132. Robert Madden did not read the First Corporate Assignment and was not aware of its

contents when signing it.

133. Robert Madden was not personally known to Thanh Vo and did not produce any identification for Thanh Vo.

134. The log book of Thanh Vo will show that the First Corporate Assignment was not signed nor notarized on 7/21/2015, nor on any other date.

### Jurat

135. The First Corporate Assignment states:

On 7/21/15, before me, Thanh Vo, a Notary Public in and for ORANGE [sic] in the State of CALIFORNIA, personally appeared ROBERT MADDEN, Assistant Secretary [sic], personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

136. The jurat of the First Corporate Assignment does not comply with California law.

### Void or Voidable

137.   The First Corporate Assignment is void or voidable as a matter of law because:

138.    (a) Robert Madden lacked any authority to sign the First Corporate Assignment on July 21, 2015, and

139.    (b) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was not in possession of the Note and was not a "person entitled to enforce the Note" on July 21, 2015, nor at any time, and

140.    (c) NEWPORT BEACH HOLDINGS, LLC paid no consideration for the Note, was not in possession of the Note, and was not a "person entitled to enforce the Note" on July 21, 2015,

nor at any time, and

141.    (d) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. lacked any authority to create the First Corporate Assignment on July 21, 2015, and

142.    (e) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. lacked any authority to record the First Corporate Assignment in Orange County, California on 7/21/2015, rendering the First Corporate Assignment void or voidable as a matter of law, and

143. (f) no county is named, and

144. (g) The title "Assistant Secretary" is given, but no organization is specified.

145.    Plaintiff is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the purported First Corporate Assignment void or voidable.

### THE SUBSTITUTION OF TRUSTEE

146. On 9/09/2016, SDS recorded as 23426665 a SUBSTITUTION OF TRUSTEE purportedly signed on 8/31/2016 by Don A. Madden, Jr. as unspecified officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC and purportedly notarized on 8/31/2016 in Orange County, California by Alida M. Rice.

147. The SUBSTITUTION OF TRUSTEE fails to provide the purported new Trustee's telephone number.

148. Defendants failed to mail to Plaintiff a copy of the Substitution of Trustee after it was recorded.

149. The SUBSTITUTION OF TRUSTEE states:

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee ...

150. The "undersigned" is NEWPORT BEACH HOLDINGS, LLC.

151. However, on 8/31/2016, NEWPORT BEACH HOLDINGS, LLC was not "the current Beneficiary."

152. The SUBSTITUTION OF TRUSTEE states:

NOW THEREFORE, NEWPORT BEACH HOLDINGS, LLC hereby substitutes Special Default Services, Inc., whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said [#19268026] Deed of Trust.

153. On 9/09/2016, NEWPORT BEACH HOLDINGS, LLC did not have any beneficial interest in the Note.

154. The signature line of the SUBSTITUTION OF TRUSTEE states only: NEWPORT BEACH HOLDINGS, LLC By: Don A. Madden, Jr.

155. The signature line of the SUBSTITUTION OF TRUSTEE does not state any office, officer, title, agency or capacity.

156. On its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

### Signer

157. Don A. Madden, Jr. is a founder of TRINITY FINANCIAL SERVICES, LLC.

158. Don A. Madden, Jr. was never an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

159. Don A. Madden, Jr. failed to verify the chain of title before signing the SUBSTITUTION OF TRUSTEE.

160. Don A. Madden, Jr. signed the SUBSTITUTION OF TRUSTEE without review of any information or documentation.

VERIFIED COMPLAINT

21

161. Don A. Madden, Jr. did not provide any office, officer, title, agency or capacity to the Notary Alida M. Rice.

162. Don A. Madden, Jr. did not provide to the Notary Alida M. Rice satisfactory evidence of any office, officer, title, agency or capacity or authority to sign the SUBSTITUTION OF TRUSTEE on behalf of NEWPORT BEACH HOLDINGS, LLC.

163. On 8/31/2016, and at all times, Don A. Madden, Jr. was not authorized to sign the SUBSTITUTION OF TRUSTEE.

164.    The SUBSTITUTION OF TRUSTEE was not signed by a duly authorized corporate officer.

165.    There is no corporate resolution or other document appointing Don A. Madden, Jr. as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

166.    There is no corporate resolution or other document directly or indirectly granting authority to Don A. Madden, Jr. to sign the SUBSTITUTION OF TRUSTEE.

167.    There was never any decision made by the Board of Directors of NEWPORT BEACH HOLDINGS, LLC directly or indirectly granting authority to Don A. Madden, Jr. to sign the SUBSTITUTION OF TRUSTEE.

168.    Beyond the signing of Deeds, Don A. Madden, Jr. has no powers, authority or duties as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

169.    In the alternative and without waiving the foregoing, Don A. Madden, Jr. did not sign the SUBSTITUTION OF TRUSTEE; someone else did using that name.

#### Notary

170. The SUBSTITUTION OF TRUSTEE was purportedly notarized on 8/31/2016 in

VERIFIED COMPLAINT

22

Orange County, California by Alida M. Rice.

171. Alida M. Rice was not a notary of California.

172. Don A. Madden, Jr. did not sign in the presence of Alida M. Rice.

173. Don A. Madden, Jr. did not read the SUBSTITUTION OF TRUSTEE and was not aware of its contents when signing it.

174. Don A. Madden, Jr. was not personally known to Alida M. Rice and did not produce any identification for Alida M. Rice.

175. The log book of Alida M. Rice will show that the SUBSTITUTION OF TRUSTEE was not signed nor notarized on 8/31/2016, nor on any other date.

### Jurat

176. The SUBSTITUTION OF TRUSTEE states:

On August 31, 2016, before me, Alida M. Rice, Notary Public, personally appeared Don A. Madden, Jr., who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

177. The jurat of the SUBSTITUTION OF TRUSTEE does not comply with California law.

### THE NOTICE OF DEFAULT

178. On 9/09/2016, SDS recorded as 23426666 a NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST ("NOD") with Trustee Sale CA01000170-16, purportedly signed by Lisa Rohrbacker as Trustee Sales Officer of "Special Default Service, Inc.

23

VERIFIED COMPLAINT

as Duly Appointed Successor Trustee." [6]

179. Plaintiff was never given written notice of protections that may be available under the federal SCRA.

180. Plaintiff was never given written notice of the right to request copies of the evidence of indebtedness and security instrument, any assignment, and payment history since the borrower was last less than 60 days past due.

181. Newport Beach (the servicer) never sent to Plaintiff any of the information required by Cal.Civ.Code § 2923.55 (b)(1).

182. Newport Beach (the servicer) never contacted Plaintiff in person or by telephone, in violation of Cal.Civ.Code § 2923.55(b)(2).

183. Newport Beach (the servicer) did not exercise due diligence as defined in Cal.Civ.Code § 2923.55(f) (despite the California Declaration of Compliance signed by Don A. Madden, Jr.).

184. Newport Beach (the servicer) never sent a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency, as required by Cal.Civ.Code § 2923.55(f)(1).

185. Newport Beach (the servicer) never attempted attempt to contact the borrower by telephone at least three times at different hours and on different days, as required by Cal.Civ.Code § 2923.55(f)(2).

186. Plaintiff's telephone number on file with SDS has never been disconnected.

187. SDS never provided a means for Plaintiff to contact it in a timely manner, as required by Cal.Civ.Code § 2923.55(f)(4).

---

[6] The recording of the NOD is subject to Cal.Civ.Code § 2923.55, which was in effect in 2016.

VERIFIED COMPLAINT

188. Trinity (the purported servicer starting January 22, 2019) never contacted Plaintiff in person or by telephone, in violation of Cal.Civ.Code § 2923.55(b)(2).

189. SDS (the entity that did the recording) never contacted Plaintiff before recording the NOD, in violation of Cal.Civ.Code § 2923.55(c).

190. Newport Beach (the servicer) never contacted Plaintiff before recording the NOD, in violation of Cal.Civ.Code § 2923.55(c).

191. Nobody ever tried with due diligence to contact Plaintiff as required by Cal.Civ.Code § 2923.55(b)(2) and (f).

192. At all relevant times, Plaintiff met the definition of borrower pursuant to subdivision (c) of Section 2920.5. Plaintiff was potentially eligible for federal, state, and proprietary foreclosure prevention alternative programs offered by, or through, Plaintiff's mortgage servicer.

193. Defendants failed to notify or initiate contact with Plaintiff to discuss available options prior to the recording of the NOD in violation of California Civil Code Section 2923.5.

194. Defendants failed to provide a copy of the Notice of Default after recording it in violation of Civil Code Sections 2923.5 and 2924.

195. The NOD states:

NOTICE IS HEREBY GIVEN THAT: Special Default Services, Inc. is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of January 9, 2007, ...

196. Special Default Services, Inc. was not the original Trustee under any Deed of Trust encumbering the Property.

197. Special Default Services, Inc. was not the duly appointed Substituted Trustee under any Deed of Trust encumbering the Property.

25

VERIFIED COMPLAINT

198. Special Default Services, Inc. was not acting as Agent for the Trustee or Beneficiary under any Deed of Trust encumbering the Property.

**Signer**

199. Lisa Rohrbacker was never Trustee Sales Officer of SDS.

200. Lisa Rohrbacker failed to verify the chain of title before signing the NOD.

201. Lisa Rohrbacker signed the NOD without review of any information or documentation.

202. On 9/09/2016, and at all times, Lisa Rohrbacker was not authorized to sign the NOD.

203. The NOD was not signed by a duly authorized corporate officer.

204. There is no corporate resolution or other document appointing Lisa Rohrbacker as Trustee Sales Officer of SDS.

205. There is no corporate resolution or other document directly or indirectly granting authority to Lisa Rohrbacker to sign the NOD.

206. There was never any decision made by the Board of Directors of SDS directly or indirectly granting authority to Lisa Rohrbacker to sign the NOD.

207. Beyond the signing of NOD's, Lisa Rohrbacker has no powers, authority or duties as a Trustee Sales Officer of SDS.

208. In the alternative and without waiving the foregoing, Lisa Rohrbacker did not sign the NOD; someone else did using that name.

*THE VIOLATIONS OF CAL.CIV.CODE §2924*

209. The sale proceedings were postponed for periods totaling more than 365 days, and no

26

VERIFIED COMPLAINT

new notice of sale was given as required by Cal.Civ.Code § 2924f, in violation of § 2924g(c)(2).

210. The notice of each postponement and the reason therefor were not given by public declaration by the trustee at the time and place last appointed for sale, in violation of § 2924g(d).

211. Attached to the NOD is a CALIFORNIA DECLARATION OF COMPLIANCE dated 8/31/2016.

212. The CALIFORNIA DECLARATION OF COMPLIANCE states:

No contact was made with the Borrower pursuant to Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan described in Civil Code § 2924.15(a).[7]

213. Plaintiff has never surrendered the secured property.

214. Plaintiff has never sent any letter confirming any such surrender.

215. Plaintiff has never delivered the keys to the Property to anyone

216. Plaintiff has never contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the

foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

217. As of 8/31/2016, Plaintiff did not have a case open under Chapter 13 of Title 11 of the United States Code.

218. Plaintiff never filed a case under Chapter 13 of Title 11 of the United States Code before 1/31/2017.

219. The CALIFORNIA DECLARATION OF COMPLIANCE was purportedly signed on 8/31/2016 by Don A. Madden, Jr. as unspecified officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

220. Don A. Madden, Jr. was never an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

221. Don A. Madden, Jr. signed the CALIFORNIA DECLARATION OF COMPLIANCE without review of any information or documentation.

*THE VIOLATIONS OF CAL.CIV.CODE §2923.3 AND §2923.5*

---

[7] Civil Code § 2924.15(a) states: "Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, owner-occupied means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes."
  Civil Code § 2923.55(c) states: "A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of borrower pursuant to subdivision (c) of Section 2920.5."
  Civil Code § 2920.5 states: "(c)(1) Unless otherwise provided and for purposes of Sections 2923.4 , 2923.5 , 2923.55 , 2923.6 , 2923.7 , 2924.9 , 2924.10 , 2924.11 , 2924.18 , and 2924.19 , "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer.
  (2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:
  (A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.
  (B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgages or beneficiaries.

VERIFIED COMPLAINT

222. No one ever provided to Plaintiff any of the information required by Cal.Civ.Code §2923.3.

223. No one contacted Plaintiff before the Notice of Default was filed.

224. No one ever contacted Plaintiff for the purpose of exploring options to avoid foreclosure.[8]

225. No one ever discussed foreclosure alternatives with Plaintiff.

226. No one ever provided Plaintiff with a single point of contact, in violation of Cal.Civ.Code Section 2923.7.

227. Plaintiff was never served with the Notice of Default.

228. No one contacted Plaintiff before the Notice of Default was filed.

229. No one ever provided Plaintiff with the amount owed.

230. No one ever provided Plaintiff with the date by which the Plaintiff could pay off the alleged debt to avoid foreclosure.

*THE SECOND CORPORATE ASSIGNMENT OF DEED OF TRUST*

231. On 9/12/2018, NEWPORT BEACH HOLDINGS, LLC recorded as 24022209 a CORPORATE ASSIGNMENT OF DEED OF TRUST ("Second Corporate Assignment"), dated 8/24/2018 and purportedly signed on 8/24/2018 by Sharon Mitchell as Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC and purportedly notarized on 8/24/2018 in Stone County,

---

(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure."

VERIFIED COMPLAINT

29

Missouri by Jessica Brown.

### Fruit from the Poisoned Tree

232. The Second Corporate Assignment to Trinity is void or voidable because on the date of the First Corporate Assignment to Newport Beach, namely 7/21/2015, AIDAN WEST FINANCIAL GROUP had a status of "Suspended FTB" by the Franchise Tax Board (and Newport Beach Holdings, LLC did not exist at that time, as it registered as a Nevada corporation, California secretary of state #201615410070, and began existing, on 6/1/2016). Therefore, Aidan West could not transact business, and in particular MERS as nominee of Aidan West could not validly, legally, lawfully assign the DOT to Newport Beach Holdings, LLC. Therefore, Newport Beach Holdings, LLC could not validly, legally, lawfully assign the DOT to Trinity, and the Second Corporate Assignment to Trinity is void or voidable and should be cancelled.

233. The Second Corporate Assignment states:

For Value Received, NEWPORT BEACH HOLDINGS, LLC, whose address is 2618 SAN MIGUEL DRIVE, SUITE 319, NEWPORT BEACH, CA, 92660 (herein "Assignor") hereby grant, sell, assign, transfer and convey to Trinity Financial Services, LLC, whose address is 2618 SAN MIGUEL DR., SUITE 303, NEWPORT BEACH, CA, 92660 (herein "Assignee") all interest under that certain Deed of Trust Dated: 1/9/2007, in the amount of $131,000.00, executed by CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 1/18/2007, Document#: 19268026 in SANTA CLARA County, State of California and all rights accrued or to accrue under said Deed of Trust.

234.    There was no "Value Received." Trinity Financial Services, LLC did not pay any

---

[8] Civil Code § 2923.5 requires that, 30 days before a notice of default is filed, the mortgagee, beneficiary, or authorized agent "shall contact the buyer in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." See Cal. Civ. Code. § 2923.5; Cal. Civ. Code. § 2923.5(a); Argueta v. J.P. Morgan Chase, 787 F.Supp.2d 1099, 1107,(E.D.Cal. 2011); Paik v. Wells Fargo Bank, N.A., 2011 WL 109482, at *3 (N.D.Cal. Jan. 13, 2011); Mabry v. Superior Ct., 185 Cal.App.4th 208, 220 & n.6 (2010). The remedy

VERIFIED COMPLAINT

consideration to NEWPORT BEACH HOLDINGS, LLC for the Second Corporate Assignment.

235. The Second Corporate Assignment does not state "together with the Note."

236. No Note was assigned, negotiated, given, bargained, transferred or conveyed together with the Second Corporate Assignment.

**Signer**

237. Sharon Mitchell was never Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

238. Sharon Mitchell failed to verify the chain of title before signing the Second Corporate Assignment.

239.    Sharon Mitchell signed the Second CORPORATE ASSIGNMENT OF DEED OF TRUST without review of any information or documentation.

240.    On 8/24/2018, and at all times, Sharon Mitchell was not authorized to sign the Second CORPORATE ASSIGNMENT OF DEED OF TRUST.

241.    The Second CORPORATE ASSIGNMENT OF DEED OF TRUST was not signed by a duly authorized corporate officer.

242.    There is no corporate resolution or other document appointing Sharon Mitchell as Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

243.    There is no corporate resolution or other document directly or indirectly granting authority to Sharon Mitchell to sign the Second CORPORATE ASSIGNMENT OF DEED OF TRUST.

244.    There was never any decision made by the Board of Directors of NEWPORT

---

for a violation of § 2923.5 is postponement of the foreclosure sale until there has been compliance with the statute. Argueta, 787 F.Supp. At 1107.

VERIFIED COMPLAINT

BEACH HOLDINGS, LLC directly or indirectly granting authority to Sharon Mitchell to sign the Second CORPORATE ASSIGNMENT OF DEED OF TRUST.

245.    Beyond the signing of Deeds, Sharon Mitchell has no powers, authority or duties as an Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

246.    In the alternative and without waiving the foregoing, Sharon Mitchell did not sign the Second CORPORATE ASSIGNMENT OF DEED OF TRUST; someone else did using that name.

### Notary

247. The Second CORPORATE ASSIGNMENT OF DEED OF TRUST was purportedly notarized on 8/24/2018 in Stone County, Missouri by Jessica Brown.

248. Jessica Brown was not a notary of Missouri.

249. Sharon Mitchell did not sign in the presence of Jessica Brown.

250. Sharon Mitchell did not read the Second CORPORATE ASSIGNMENT OF DEED OF TRUST and was not aware of its contents when signing it.

251. Sharon Mitchell was not personally known to Jessica Brown and did not produce any identification for Jessica Brown.

252. The log book of Jessica Brown will show that the Second CORPORATE ASSIGNMENT OF DEED OF TRUST was not signed nor notarized on 8/24/2018, nor on any other date.

### Jurat

253. The Second CORPORATE ASSIGNMENT OF DEED OF TRUST states:

On August 24, 2018, before me, Jessica Brown, a Notary Public in and for STONE County, in the State of MISSOURI, personally appeared SHARON MITCHELL, ASSISTANT VICE PRESIDENT, NEWPORT BEACH HOLDINGS, LLC,

32

VERIFIED COMPLAINT

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

254. The jurat of the Second CORPORATE ASSIGNMENT OF DEED OF TRUST does not comply with Missouri law.

### Void or Voidable

255.   The Second CORPORATE ASSIGNMENT OF DEED OF TRUST is void or voidable as a matter of law because:

256.   (a) Sharon Mitchell lacked any authority to sign the Second Corporate Assignment on August 24, 2018, and

257.   (b) NEWPORT BEACH HOLDINGS, LLC was not in possession of the Note and was not a "person entitled to enforce the Note" on August 24, 2018, nor at any time, and

258.   (c) TRINITY FINANCIAL SERVICES, LLC paid no consideration for the Note, was not in possession of the Note, and was not a "person entitled to enforce the Note" on August 24, 2018, nor at any time, and

259.   (d) NEWPORT BEACH HOLDINGS, LLC lacked any authority to create the Second Corporate Assignment on August 24, 2018, and

260.   (e) NEWPORT BEACH HOLDINGS, LLC lacked any authority to record the Second Corporate Assignment in Stone County, Missouri on 9/12/2018, rendering the Second Corporate Assignment void or voidable as a matter of law.

261.   Plaintiff is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the purported CORPORATE ASSIGNMENT OF DEED OF TRUST void or voidable.

33

VERIFIED COMPLAINT

## THE NOTICE OF TRUSTEE'S SALE

262.   On 09/06/2018, SDS recorded as 24018268 a NOTICE OF TRUSTEE'S SALE, dated 9-5-2018 and purportedly signed by Lisa Welch as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee."

263. The NOTICE OF TRUSTEE'S SALE fails to contain the correct name, street address, and telephone number of the substituted trustee (SDS). Therefore, pursuant to Cal.Civ.Code § 2934(e) the sale conducted by the substituted trustee SDS is void.

### Fruit from the Poisoned Tree

264. On the date of the First Corporate Assignment to Newport Beach, namely 7/21/2015, AIDAN WEST FINANCIAL GROUP had a status of "Suspended FTB" by the Franchise Tax Board (and Newport Beach Holdings, LLC did not exist at that time, as it registered as a Nevada corporation, California secretary of state #201615410070, and began existing, on 6/1/2016). Therefore, Newport Beach never became assignee or successor beneficiary of the Deed of Trust, Newport Beach could not appoint Special Default Services via the SUBSTITUTION OF TRUSTEE, Special Default Services could not give notice of sale, and the NOTICE OF TRUSTEE'S SALE is void or voidable and should be cancelled.

265. SDS is not a "Duly Appointed Successor Trustee" because, on its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC., and for other reasons as discussed above.

## THE FORECLOSURE SALE

266. On 11/15/2018, SDS recorded as 24064356 a TRUSTEE'S DEED UPON SALE

34

("Trustee's Deed"), dated 11/8/2018 and purportedly signed by Lisa Welch as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee" and purportedly notarized on 11/8/2018 in Orange County, California by Bernardo Sotelo-Hernandez.

### Fruit from the Poisoned Tree

267. The TRUSTEE'S DEED UPON SALE is void or voidable because on the date of the First Corporate Assignment to Newport Beach, namely 7/21/2015, AIDAN WEST FINANCIAL GROUP had a status of "Suspended FTB" by the Franchise Tax Board (and Newport Beach Holdings, LLC did not exist at that time, as it registered as a Nevada corporation, California secretary of state #201615410070, and began existing, on 6/1/2016). Therefore, Aidan West could not transact business, and in particular MERS as nominee of Aidan West could not validly, legally, lawfully assign the DOT to Newport Beach Holdings, LLC. Therefore, Newport Beach Holdings, LLC could not validly, legally, lawfully assign the DOT to Trinity. Therefore, Trinity could not validly, legally, lawfully conduct a sale, and the TRUSTEE'S DEED UPON SALE is void or voidable and should be cancelled.

### Signer

268. Lisa Welch was never Trustee Sales Officer of SDS.

269. Lisa Welch failed to verify the chain of title before signing the TRUSTEE'S DEED UPON SALE.

270.    Lisa Welch signed the TRUSTEE'S DEED UPON SALE without review of any information or documentation.

271.    On 11/8/2018, and at all times, Lisa Welch was not authorized to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

35

272.    The TRUSTEE'S DEED UPON SALE was not signed by a duly authorized corporate officer.

273.    There is no corporate resolution or other document appointing Lisa Welch as Trustee Sales Officer of SDS.

274.    There is no corporate resolution or other document directly or indirectly granting authority to Lisa Welch to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

275.    There was never any decision made by the Board of Directors of SDS directly or indirectly granting authority to Lisa Welch to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

276.    Beyond the signing of Deeds, Lisa Welch has no powers, authority or duties as a Trustee Sales Officer of SDS.

277.    In the alternative and without waiving the foregoing, Lisa Welch did not sign the TRUSTEE'S DEED UPON SALE; someone else did using that name.

**Notary**

278. The TRUSTEE'S DEED UPON SALE was purportedly notarized on 11/8/2018 in Orange County, California by Bernardo Sotelo-Hernandez

279. Bernardo Sotelo-Hernandez was not a notary of California.

280. Lisa Welch did not sign in the presence of Bernardo Sotelo-Hernandez.

281. Lisa Welch did not read the TRUSTEE'S DEED UPON SALE and was not aware of its contents when signing it.

282. Lisa Welch was not personally known to Bernardo Sotelo-Hernandez and did not produce any identification for Bernardo Sotelo-Hernandez.

36

VERIFIED COMPLAINT

283. The log book of Bernardo Sotelo-Hernandez will show that the TRUSTEE'S DEED

UPON SALE was not signed nor notarized on 11/8/2018, nor on any other date.

**Jurat**

284. The TRUSTEE'S DEED UPON SALE states:

On 11-8-18 before me, Bernardo Sotelo-Hernandez, a Notary Public, personally appeared LISA WELCH, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

285. The jurat of the TRUSTEE'S DEED UPON SALE does not comply with California

law.

286. The Trustee's Deed states:

WHEN RECORDED MAIL DEED AND TAX STATEMENT TO:
TRINITY FINANCIAL SERVICES, LLC
2618 SAN MIGUEL DRIVE
SUITE 303
NEWPORT BEACH, CA 92660

287. The Trustee's Deed states:

The undersigned Grantor, under penalty of perjury, declares:
EXEMPT PER R&T CODE SECTION 11926
1) The Grantee herein was the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was: $300,408.97
3) The amount paid by the grantee at the trustee sale was: $300,408.97
4) The documentary transfer tax is: $0.00
5) Said property is in the city of: SAN JOSE
6) A.P.N. 092-11-091
and Special Default Services, Inc., herein called "Trustee", as Trustee (or as Successor Trustee) of the Deed of Trust hereinafter described, hereby grants and conveys, but without covenant or warranty, express or implied, to TRINITY FINANCIAL SERVICES, LLC, herein called "Grantee", the real property in the County of Santa Clara, State of California, described as follows: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

37

VERIFIED COMPLAINT

288. The reason for the exemption was not noted on the Trustee's Deed, in violation of California law.

289. Special Default Services, Inc. was not a lawful Trustee on 11/8/2018.

290. Special Default Services, Inc. was never a lawful Trustee.

291. The Deed states:

Pursuant to the Notice of Trustee's Sale, the above described property was sold by Trustee (or Successor Trustee) at public auction on **November 5, 2018** at the place specified in said Notice, to Grantee who was the highest bidder therefore, for $300,408.97 in lawful money of the United States, which has been paid, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said public auction.

292. The public auction on November 5, 2018 was not lawfully conducted.

293. The Trustee's Deed is invalid because the sale date (11/5/2018) occurred more than one year after the Notice of Default (9/09/2016).

### *THE PURPORTED CHANGE IN SERVICER TO TRINITY*

294. On January 7, 2019, Newport Beach mailed a letter (Exhibit B) to Plaintiff stating:

Effective January 22, 2019, Newport Beach Holdings, LLC is transferring the servicing of the loan referenced above [#1000001421] to Trinity Financial Services, LLC.

295. When Newport Beach sold the loan to Trinity (on or about 8/24/2018), Newport Beach did not retain the servicing rights.

296. From 8/24/2018 (the date of the Second Corporate Assignment) until January 22, 2019 (the date Trinity became the servicer) there was no servicer. Therefore, no one was authorized to collect payments.

297. At all times prior to January 7, 2019, Newport Beach failed and neglected to notify

Plaintiff of any new servicer.

298. At all times prior to January 7, 2019, Trinity failed and neglected to notify Plaintiff of any new servicer.

***TENDER***

299. Each of the Defendants is not a mortgagee whatsoever, and is otherwise making a completely unsubstantiated claim to the property. [9]

### FIRST CAUSE OF ACTION
### (Quiet Title)
### (Against All Defendants)

300.   The allegations under "Facts" are re-alleged as if fully set forth.

301.   All Defendants claimed, and continue to claim, an interest and estate in the real property at issue by recording the NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST.

302.   All Defendants claimed, and continue to claim, an interest and estate in the real property at issue by recording the TRUSTEE'S DEED UPON SALE.

303.   At all times relevant to this Complaint, Plaintiff was and is in possession and has been in continuous possession of the real property at issue, against all the world, and has paid all lawful property taxes thereon.

304.   The real property at issue is the homestead and domicile of Plaintiff.

305.   Plaintiff has superior and legal title to, and other interest in, the real property at

---

[9] Tender is not required where the Complaint alleges that the defendant is not a mortgagee "whatsoever." See [48] Order in Case 1:11-cv-00714-JMS-BMK (Seabright, J). See also Klohs et al. v. Wells Fargo Bank, N.A., Civ. No. 12-00274 JMS-KSC, Order Granting Defendant Wells Fargo Bank N.A.'s Motion to Dismiss (Seabright, J.) (citing Amina v. BONYM (D. Haw. Aug. 9, 2012)).

VERIFIED COMPLAINT

issue.

306.    Plaintiff's title comes from a Deed.

307.    Any and all loans encumbering the Property have been paid or otherwise discharged.

308.    At all times relevant to this Complaint, Plaintiff was and is the owner of the real property at issue and entitled to such ownership and use without interference by the Chase Defendants.

309.    Defendants' claims to any right, title or interest in the property are false and without merit.

310.    As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial, for which the above-named parties are jointly and severally liable.

311.    Plaintiff seeks a decree quieting title to the real property at issue in Plaintiff as of the date the Complaint was filed, and such further equitable relief as the Court deems proper.

## SECOND CAUSE OF ACTION
### (Rosenthal Fair Debt Collection Practices Act (C.C.C. 1788 - 1788.33))
### (Against Defendants Newport Beach, Special Default Services, Trinity Financial Services, LLC)

312.    The allegations under "Facts" are re-alleged as if fully set forth.

313.    All Defendants are "debt collector[s]" as defined by the Rosenthal Fair Debt Collection Practices Act and other definitional requirements and devote a substantial portion of their business to the collection of consumer debts, such as the alleged debt at issue in this litigation.

VERIFIED COMPLAINT

314.    The debt alleged by Defendants, at issue in this litigation, is covered as a debt as defined in the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), since it was incurred for the personal, family or household purposes of the Plaintiff and the filing of documents under purported authority, which parties did not have, to falsely represent that it had interests for the personal, family or household purposes of the Plaintiff which violated the RFDCPA.

315.    The "debt" was never acquired by Newport Beach.

316.    Newport Beach never paid consideration.

317.    There was no "true sale" to Newport Beach.

318.    Newport Beach attempted to collect a debt not owed to it, in violation of the RFDCPA.[10]

319.    SDS attempted to collect a debt not owed to it, in violation of the RFDCPA.

320.    Trinity attempted to collect a debt not owed to it, in violation of the RFDCPA.

321.    These acts as well as the attempted foreclosure are wrongful, intentional, reckless, willful and wanton, negligent, deceptive, and predatory. Defendants knew they should not falsify documents particularly official documents meant to prove a material fact such as secured creditor status. The perjured documents violate the RFDCPA and California Business & Professions Code §17200.

322.    As a result of the aforesaid RFDCPA violations, Plaintiff has been subjected to false and illegal collection activities, and have therefore been harmed due to the slander to Plaintiff's credit and emotional/physical health issues proximately caused by these defendants.

323.    As a result of the above-described wrongful actions, Plaintiff has suffered damages

---

[10] "This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts." House Report 95-131, 95th Cong., 1st

VERIFIED COMPLAINT

in an amount to be determined at trial, for which the above-named parties are jointly and severally liable.

## THIRD CAUSE OF ACTION
### (Cancellation of Instrument(s))[11]
### (Against Defendants SPECIAL DEFAULT SERVICES, INC., NEWPORT BEACH HOLDINGS, LLC)

324.   The allegations under "Facts" are re-alleged as if fully set forth.

325.   The recorded instrument 19268026 (Deed) is void or voidable because it does not bear Plaintiff's signature.

326.   The Deed is void or voidable because the loan was made in violation of the Federal Housing Act because the Property is not located within any place that has been ceded to the Federal Government by act of the California Legislature.

### MERS

327.   AIDAN WEST FINANCIAL GROUP has never been a member of MERS.

328.   AIDAN WEST FINANCIAL GROUP has never been a nominee of MERS.

329.   "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a member of MERS.

330.   "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a nominee of MERS.

---

Sess., p. 8, Accord, Senate Report No. 95-382, p. 4, reprinted at 1997 USCCAN 1695, 1699.
[11] To state a cancellation claim, a plaintiff must allege that: (1) there is a reasonable apprehension that the instrument left standing might cause serious injury; (2) the instrument is invalid on its face; (3) the instrument is void or voidable; (4) the instrument was in existence or under the defendant's possession and control when the action was filed; and (5) if the interest is voidable rather than void, that plaintiff acted promptly to rescind. Civ. Code §§ 3412, 3413;

VERIFIED COMPLAINT

42

331.    Therefore, the Deed lacks a beneficiary. Therefore, the Deed is void or voidable and should be cancelled.

### Fruit from the Poisoned Tree

332.    The recorded instrument 23175056 ("First Corporate Assignment") is void or voidable because as of 7/21/2015 (the purported signature date of the First Corporate Assignment), and as of 12/17/2015 (the recording date of the First Corporate Assignment), Newport Beach Holdings, LLC did not exist (since Newport Beach Holdings, LLC registered as a Nevada corporation, California secretary of state #201615410070, and began existing, on 6/1/2016). Therefore, Newport Beach could not receive any assignment of any loan on that date, and the First Corporate Assignment is void or voidable and should be cancelled.

333.    Since the First Corporate Assignment is void, it follows that the recorded instrument 24022209 (second CORPORATE ASSIGNMENT OF DEED OF TRUST) is also void because Newport Beach could not have had any valid beneficial interest resulting from the First Corporate Assignment, to assign to Trinity.

334.    Since the First Corporate Assignment is void, and since NEWPORT BEACH HOLDINGS, LLC could not have received any beneficial interest from it, it follows that the recorded instrument 23426665 (the September 9, 2016 SUBSTITUTION OF TRUSTEE purportedly signed by Don A. Madden, Jr. as unspecified officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC) is also void, and SDS could not have received any authority as Trustee from it.

335.    Since the First Corporate Assignment is void, and since NEWPORT BEACH HOLDINGS, LLC could not have received any beneficial interest from it, and since the

September 9, 2016 SUBSTITUTION OF TRUSTEE is void, and since SDS could not have received any authority as Trustee from it, it follows that the recorded instrument 23426666 (September 9, 2016 NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST, purportedly signed by Lisa Rohrbacker as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee") is also void and could not have satisfied the legal requirement of a NOD, and Plaintiff (and the public) could not validly, lawfully and legally have been put on notice.

336.  Since the First Corporate Assignment is void, and since NEWPORT BEACH HOLDINGS, LLC  could not have received any beneficial interest from it, and since the September 9, 2016 SUBSTITUTION OF TRUSTEE is void, and since SDS could not have received any authority as Trustee from it, it follows that the recorded instrument 24018268 (the September 6, 2018 Notice of Sale, purportedly signed by Lisa Welch as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee") is also void and could not have satisfied the legal requirement of a Notice of Sale, and Plaintiff (and the public) could not validly, lawfully and legally have been put on notice, and neither SDS nor Trinity could validly, lawfully and legally have conducted a sale.

337.  Since the First Corporate Assignment is void, and since NEWPORT BEACH HOLDINGS, LLC  could not have received any beneficial interest from it, and since the September 9, 2016 SUBSTITUTION OF TRUSTEE is void, and since SDS could not have received any authority as Trustee from it, it follows that the recorded instrument 24064356 (the November 15, 2018 TRUSTEE'S DEED UPON SALE, purportedly signed by Lisa Welch as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee") is

44

also void, and neither SDS nor Trinity could validly, lawfully and legally have conducted a sale.

338. The above-named documents are also void because they were forged and fabricated, or in the alternative because the signers lacked authorization to sign, and because the signers had not read the documents and did not know their contents, and because they were not properly notarized nor acknowledged, and because Plaintiff did not sign the documents that Defendants allege, and because Trinity never acquired any Note encumbering the Property, and because SDS was never properly appointed or substituted as Successor Trustee, and for fraud because the transaction was not as it was represented to be (e.g. the "Lender" did not lend money or credit), and for all reasons discussed above, and for other reasons yet to be discovered.

339. There is a reasonable apprehension that the above-named instruments, if left standing, might and will cause serious injury to Plaintiff in the form of supporting an Unlawful Detainer eviction lawsuit (and they have already caused serious injury to Plaintiff in the form of a purported nonjudicial foreclosure sale).

340. The above-named instruments are invalid on their face.

341. The above-named instruments are void and voidable.

342. The above-named instruments were in existence and under Defendants' possession and control when the action was filed.

343. Plaintiff acted promptly to rescind and cancel all of the above-named instruments, to the extent that rescission and cancellation are appropriate.

344.   The recording of the above-named void instruments has damaged Plaintiff in an amount to be determined at trial, for which the above-named parties are jointly and severally liable. Plaintiff requests the Court cancel all of the above-named recorded instruments.

### FOURTH CAUSE OF ACTION

45

(Wrongful Foreclosure)
(Against Defendants SPECIAL DEFAULT SERVICES, INC., NEWPORT BEACH
HOLDINGS, LLC, TRINITY FINANCIAL SERVICES, LLC )

345.    The allegations under "Facts" are re-alleged as if fully set forth.

346.    Special Default Services, Inc. caused a fraudulent and illegal sale of real property purportedly using the power of sale in the Deed. It was fraudulent and illegal because:

347.    (a) Special Default Services, Inc. was never a lawful Trustee. Special Default Services, Inc. was never appointed as Trustee by anyone with authority to do so. The allegations under the heading "SUBSTITUTION OF TRUSTEE" are incorporated here.

348.    (b) The Deed does not bear Plaintiff's signature.

349.    (c) The Deed states that MERS acts as nominee for "Lender" AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA. However, AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA  has never been either a member or a nominee of MERS.

350.    Plaintiff was harmed by the sale. Real estate is unique, and Plaintiff no longer owns her home.

351.    Plaintiff had tendered the amount of what they owed, since Plaintiff owed nothing.

352.    In the alternative and without waiving the foregoing, Plaintiff was excused from tendering because each of the Defendants is not a mortgagee whatsoever, and is otherwise making a completely unsubstantiated claim to the property. See footnote (4) above.

353.    As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial, for which the above-named parties are jointly and severally

VERIFIED COMPLAINT

46

liable, and the Court should set aside the sale and vacate the Trustee's Deed.

### PRAYER FOR RELIEF

354.   WHEREFORE, Plaintiff demand judgment against Defendants and their predecessors in interest as follows:

355.   An Order declaring Plaintiff to be owner of and entitled to possession of the real property at issue free of any claim, estate, title, lien or interest of Defendants or those claiming under Defendants, and quieting title in such property in Plaintiff; an award of money damages in the amount of $1,050,000.00; a Judgment for treble damages in the amount of $3,150,000.00; cancellation of the above-described recorded instruments; an injunction enjoining Defendants from reporting negative information to any credit bureau and from evicting.

356.   Award to Plaintiff her reasonable costs, disbursements and prejudgment interest.

357.   Award to Plaintiff her reasonable attorney's fees.

358.   Award to Plaintiff punitive damages.

359.   An accounting from each Defendant of all funds handled in any way concerning the mortgage loan.

360.   Such other relief as the court may deem proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. 1746.

Executed on this 12th day of March, 2019.

/s/ Cecilia Mangaoang
Cecilia Mangaoang
2901 Capewood Lane
San Jose, CA 95132-1108
(408) 876-9950

VERIFIED COMPLAINT

47

EXHIBIT   A



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
PO BOX 942857
SACRAMENTO CA 94257-0540

**Entity Status Letter**

Date:   3/11/2019

ESL ID: 3128057590

According to our records, the following entity information is true and accurate as of the date of this letter.

Entity ID:  2548283

Entity Name:  AIDAN WEST FINANCIAL GROUP, INC.

| | | |
|---|---|---|
| ☐ | 1. | The entity is in good standing with the Franchise Tax Board. |
| ☑ | 2. | The entity is **not** in good standing with the Franchise Tax Board. |
| ☐ | 3. | The entity is currently exempt from tax under Revenue and Taxation Code (R&TC) Section 23701. |
| ☐ | 4. | We do not have current information about the entity. |

The above information does not necessarily reflect:
- The entity's status with any other agency of the State of California, or other government agency.
- If the entity's powers, rights, and privileges were suspended or forfeited at any time in the past, or the entity did business in California at a time when it was not qualified or not registered to do business in California:
  - The status or voidability of any contracts made in California by the entity at a time when the entity was suspended or forfeited (R&TC Sections 23304.1, 23304.5, 23305a, 23305.1).
  - For entities revived under R&TC Section 23305b, any time limitations on the revivor or limitation of the functions that can be performed by the entity.

**Internet and Telephone Assistance**

Website:     **ftb.ca.gov**
Telephone: 800.852.5711 from within the United States
                916.845.6500 from outside the United States
TTY/TDD:   800.822.6268 for persons with hearing or speech impairments

FTB 4263A WEB (NEW 02-2012)

# EXHIBIT   B



**Newport Beach Holdings, LLC**

A Financial Services & Real Estate Acquisitions Company

January 7, 2019

CECILIA MANGAOANG
2901 CAPEWOOD LANE
SAN JOSE, CA 95132

RE: Newport Beach Holdings, LLC Loan 1000001421

**Important information about your loan:**

Effective January 22, 2019, Newport Beach Holdings, LLC is transferring the servicing of the loan referenced above to Trinity Financial Services, LLC. This transfer does not change the terms or conditions of your note agreement or any mortgage, other than certain terms relating to their servicing.

All payments made on or after January 22, 2019, should be made payable to and sent to:

> Trinity Financial Services, LLC
> 2618 San Miguel Drive, Suite 303
> Newport Beach, CA 92660

However, until that time, please continue to remit your payments to Newport Beach Holdings, LLC.

INQUIRIES: Any questions you have on or after January 22, 2019, should be referred to Trinity Financial Services, LLC Customer Service Department at the following address:

> Trinity Financial Services, LLC
> 2618 San Miguel Drive, Suite 303
> Newport Beach, CA 92660

The toll-free telephone number is (855) 818-6806, between 8:30 a.m. and 5:30 p.m., Monday through Friday, Pacific Standard Time.

We appreciate the opportunity to have been of service to you. If you have any questions prior to January 22, 2019, please contact the Customer Service Department at (855) 734-0411 between 8:30 a.m. and 5:30 p.m., Monday through Friday, Pacific Standard Time.

The separate laws of Connecticut, the District of Columbia, New York City, North Carolina and Vermont each require that their respective residents be furnished with this notice:

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

This paragraph is a special notice to our customers who have filed a petition for protection under the United States Bankruptcy Code. Unless you have signed a reaffirmation agreement with Newport Beach Holdings, LLC, and that agreement has been filed with the bankruptcy court (and not subsequently rescinded or disallowed in accordance with the Bankruptcy Code), you should disregard all portions of this letter which state or suggest that you still have a personal liability to pay Newport Beach Holdings, LLC. You may wish to consult with an attorney regarding this letter, your bankruptcy and the ability of Newport Beach Holdings, LLC to enforce its lien on collateral, if any. If you have obtained a discharge under the Bankruptcy Code this letter is for informational purposes or to protect our interests in any collateral.



Scanned by CamScanner