Cecilia Mangabang
1765 Landess Ave, PMB #232
Milpitas, CA 95035
(408) 876-9950

**RECEIVED**

SEP 03 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## (SAN JOSE)

|  |  |
|---|---|
| Cecilia Mangabang, | ) Case No. 5:2019cv03125-VKD |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SPECIAL DEFAULT SERVICES, INC.; | ) |
| | ) |
| TRINITY FINANCIAL SERVICES, LLC; | ) |
| | ) |
| NEWPORT BEACH HOLDINGS, LLC; | ) |
| | ) |
| WILMINGTON TRUST, NA, SUCCESSOR | ) |
| TRUSTEE TO CITIBANK, N.A. AS TRUSTEE, | ) |
| FOR THE BENEFIT OF REGISTERED | ) |
| HOLDERS OF STRUCTURED ASSET | ) |
| MORTGAGE INVESTMENTS II TRUST | ) |
| 2007-AR3,MORTGAGE PASS-THROUGH | ) |
| CERTIFICATES, SERIES 2007-AR3 | ) |
| | ) |
| SELECT PORTFOLIO SERVICING, INC.; | ) |
| | ) |
| Does # 1-10, inclusive, | ) |
| | ) |
| Defendants. | ) |

1

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

**PLAINTIFF'S RESPONSE TO [17], [43] NOTICE OF MOTION AND MOTION OF DEFENDANTS TRINITY FINANCIAL SERVICES, LLC, AND NEWPORT BEACH HOLDINGS, LLC, TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**AND**

**[43-1] REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION OF DEFENDANTS TRINITY FINANCIAL SERVICES, LLC, AND NEWPORT B.EACH HOLDINGS, LLC, TO DISMISS THE COMPLAINT**

Plaintiff responds to [17] NOTICE OF MOTION AND MOTION OF DEFENDANTS TRINITY FINANCIAL SERVICES, LLC, AND NEWPORT BEACH HOLDINGS, LLC, TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF ("[17] Motion") and to [43] NOTICE OF MOTION AND MOTION OF DEFENDANTS TRINITY FINANCIAL SERVICES, LLC, AND NEWPORT BEACH HOLDINGS, LLC, TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF ("[43] Motion"). The two Motions are identical in substance; the [43] Motion is merely a re-noticing of the [17] Motion.

Plaintiff additionally responds to [43-1] REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION OF DEFENDANTS TRINITY FINANCIAL SERVICES, LLC, AND NEWPORT B.EACH HOLDINGS, LLC, TO DISMISS THE COMPLAINT ("RJN").

The [17], [43] Motions state:

> In Plaintiff's "Summary of Your Assets and Liabilities and Certain Statistical Information, Schedule A/B: Property," Plaintiff was required to identify – under penalty of perjury – any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Plaintiff checked the box for "No" ... [and] was also required to identify any "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." Id. Again, Plaintiff checked the box for "No." [and]

2

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

> listed Defendants' secured claim in her Schedule D and did not mark the claim as
> "disputed." ...
>
> Because Plaintiff failed to identify any claims she had against Defendants
> when she filed her bankruptcy schedules, and acknowledged the underlying debt,
> Plaintiff is judicially-estopped from alleging new claims against Defendants in
> this action and taking positions wholly inconsistent with her bankruptcy filings.

However, the resolution is obvious: in 2017 and 2018 Plaintiff was unaware of the present

claims. In addition, see see F.R.C.P. (d)(3): "Inconsistent Claims or Defenses. A party may state

as many separate claims or defenses as it has, regardless of consistency."

The [17], [43] Motions state:

> As noted by numerous courts, the party initiating foreclosure need not be in
> possession of the note.

That is correct,[1] the requirement is that the party initiating foreclosure must be a "person entitled

to enforce the note," not necessarily to be in possession of the note. See <u>Santens v. Los Angeles</u>

<u>Finance Co.</u> (1949) 91 Cal.App.2d 197, 202 [only a person entitled to enforce the note can

---

[1] But see SHOW ME YOUR PAPERS: SALES AND ASSIGNMENTS OF SECURED REAL ESTATE LOANS
AND THE CALIFORNIA FORECLOSURE PROCESS (PART II), Reprinted in part from Volume 22, Number 4,
March 2012, MILLER & STARR REAL ESTATE NEWS ALERT, by Karl E. Geier,J.D.
http://www.msrlegal.com/uploads/documents/MSR_March_2012_Nws_PartII_KEG.pdf page 7:
To summarize, when the action is for collection of a negotiable instrument, the plaintiff must prove holder status or
rights of a holder (i.e., produce an original instrument that was either duly indorsed to him or her under Article 3 of
the UCC, or otherwise transferred to him or her under the provisions of Article 9 of the UCC dispensing with the
requirement of an indorsement). In either case, the minimally necessary requirement is actual possession and
production of the note. A judicial foreclosure action is by definition an action "for the recovery of any debt, or the
enforcement of any right secured by mortgage upon real property." It is therefore subject to the rules applicable to
negotiable instruments. While no reported California appellate decision has directly so held since enactment of the
California Uniform Commercial Code in 1965, this conclusion would follow from the pre-Code case authority
discussed above and the fact that the current Commercial Code provisions governing negotiable instruments and the
right to enforce are substantially the same as under prior law and require production of the note. If the debt is
evidenced by a negotiable instrument, therefore, an action for judicial foreclosure should not be possible unless the
plaintiff produces the note and either proves due indorsement of the note to him or her or indorsement in blank, or a
sale without indorsement of a record transferring the note to him or her.
See also <u>Adolph Ramish, Inc. v. Woodruff</u>, 2 Cal. 2d 190, 200-201, 40 P.2d 509, 96 A.L.R. 1146 (1934); Shafer v.
Willis, 124 Cal. 36, 38, 56 P. 635 (1899) (production of note at trial was sufficient evidence of ownership).

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

foreclose on the deed of trust].) See also <u>Yvanova v. New Century Mortgage Corp.</u>, 365 P. 3d

845 - Cal: Supreme Court 2016:

> A promissory note is a negotiable instrument the lender may sell without notice to
> the borrower. [cites] The deed of trust, moreover, is inseparable from the note it
> secures, and follows it even without a separate assignment. [cites] ...
>
> A deed of trust may thus be assigned one or multiple times over the life of the
> loan it secures. But if the borrower defaults on the loan, only the current
> beneficiary may direct the trustee to undertake the nonjudicial foreclosure
> process. "[O]nly the 'true owner' or 'beneficial holder' of a Deed of Trust can
> bring to completion a nonjudicial foreclosure under California law." [cites] [bank
> and reconveyance company failed to establish they were current beneficiary and
> trustee, respectively, and therefore failed to show they "had authority to conduct
> the foreclosure sale"]; [cites] [under Mass. law, only the original mortgagee or its
> assignee may conduct nonjudicial foreclosure sale].)
>
> In itself, the principle that only the entity currently entitled to enforce a debt may
> foreclose on the mortgage or deed of trust securing that debt is not, or at least
> should not be, controversial. It is a "straightforward application[] of well-
> established commercial and real-property law: a party cannot foreclose on a
> mortgage unless it is the mortgagee (or its agent)." (Levitin, The Paper Chase:
> Securitization, Foreclosure, and the Uncertainty of Mortgage Title (2013) 63
> Duke L.J. 637, 640.) Describing the copious litigation arising out of the recent
> foreclosure crisis, a pair of commentators explained: "While plenty of uncertainty
> existed, one concept clearly emerged from litigation during the 2008 2012 period:
> in order to foreclose a mortgage by judicial action, one had to have the right to
> enforce the debt that the mortgage secured. It is hard to imagine how this notion
> could be controversial." [cites]
>
> More subject to dispute is the question presented here: under what circumstances,
> if any, may the borrower challenge a nonjudicial foreclosure on the ground that
> the foreclosing party is not a valid assignee of the original lender? Put another
> way, does the borrower have standing to challenge the validity of an assignment
> to which he or she was not a party?
>
> ... Though the borrower is not entitled to object to an assignment of the
> promissory note, he or she is obligated to pay the debt, or suffer loss of the
> security, only to a person or entity that has actually been assigned the debt. [cites]
> [party claiming under an assignment must prove fact of assignment].) The
> borrower owes money not to the world at large but to a particular person or

4

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security.

It is no mere "procedural nicety," from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so. [cites] "Such a view fundamentally misunderstands the mortgage contract. The mortgage contract is not simply an agreement that the home may be sold upon a default on the loan. Instead, it is an agreement that if the homeowner defaults on the loan, the mortgagee may sell the property pursuant to the requisite legal procedure." (Ibid., italics added and omitted.)

See also <u>Deutsche Bank Trust Co. Americas v. Walmsley</u>, 277 Or App 690, 695, 374 P3d 937

(2016) (only a party entitled to enforce the note may judicially foreclose a trust deed).

See paragraphs 179, 180, 216, 217, 350, 351 of the Complaint (none of the Defendants is

a person entitled to enforce the note).

The [17], [43] Motions state:

… This holding is supported by Civil Code § 2924(a)(1), which allows a notice of default to be recorded by the "trustee, mortgagee, or beneficiary, or any [] authorized agents…"

However, the Complaint squarely addresses this issue by alleging:

311. None of the Defendants was the trustee, mortgagee, or beneficiary, or any of their authorized agents.

The [17], [43] Motions state:

Plaintiffs' speculative accusations of lack of ownership or beneficial interest in the Second Loan are insufficient to maintain a cause of action under applicable California law. [cites] (stating that "...Plaintiff, like Gomes, 'simply seeks the right to bring a lawsuit to find out whether [Defendants have] such authority. No case law or statute authorizes such a speculative suit.")

However, the <u>Gomes</u> and <u>Hansen</u> cases were "speculative" in the sense that no sale had

occurred. See <u>Gomes</u> at 1151-1152:

5

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

Gomes defaulted on his loan payments, and he was mailed a notice of default and election to sell--recorded on March 10, 2009--which initiated a nonjudicial foreclosure process. The notice of default was sent to Gomes by ReconTrust, which identified itself as an agent for MERS [together with a declaration]. In May 2009 Gomes filed a lawsuit against Countrywide, MERS and ReconTrust, alleging several causes of action and attaching as exhibits the deed of trust and the notice of default.

Here, however, a sale has occurred. See Complaint, ¶¶ 360-393 (under the heading "THE

FORECLOSURE SALE"). For example:

391. The Deed states:
Pursuant to the Notice of Trustee's Sale, the above described property was sold by Trustee (or Successor Trustee) at public auction on November 5, 2018 at the place specified in said Notice, to Grantee who was the highest bidder therefore, for $300,408.97 in lawful money of the United States, which has been paid, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said public auction.

The [17], [43] Motions state:

In this case, paragraph 17 of the Deed of Trust states in relevant part that the "recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein." RJN, Ex. 2. Here, the TDUS recites, among other things, the following: …

However, first, the Complaint alleges in ¶¶ 27-30 that SDS' recording of the NOD was unlawful

because SDS had not been lawfully appointed because on the date of the First Corporate

Assignment of Second Deed to Newport Beach, Aidan West was "suspended" and Newport

Beach Holdings, LLC did not exist.

Second, at this Motion to Dismiss stage, the allegations of the Complaint are to be taken

as true, not a "prima facie" case (which can be rebutted at trial) based on public records. And

6

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

judicial notice is to be taken of "facts" (such as the fact that the public records exist), not the truth or falsity of the statements in the public records.

Third, the Complaint alleges invalidity of the TDUS and the Deed of Trust:

2. Plaintiff is not in default. Plaintiff has made all agreed payments to the party who was owed.
5. The First Deed (#19268025) does not provide for, nor allow, any removal or substitution of trustee.
6. The Second Deed (#19268026) does not provide for, nor allow, any removal or substitution of trustee.
13. However, the "first lien position" Deed of Trust (#19268025) is null and void because it does not bear Plaintiff's signature and because of alteration, payoff/satisfaction, discharge, lack of debt, lack of constitutionally-required notice, and other reasons.
31. The First Deed does not bear Plaintiff's signature.
32. The Second Deed does not bear Plaintiff's signature.
81. The First Deed does not bear Plaintiff's signature.
82. The Adjustable Rate Rider to the First Deed does not bear Plaintiff's signature.
83. The First Deed does not provide for, nor allow, any removal or substitution of trustee.
97. The Second Deed does not bear Plaintiff's signature.
98. The Prepayment Rider to the Second Deed does not bear Plaintiff's signature.
99. The Second Deed does not contain any definition section.
100. The Second Deed does not provide for, nor allow, any removal or substitution of trustee.
103. The Second Deed does not contain a definitions section, however it refers to "Borrower's note dated JANUARY 9, 2007, and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $131,000, with interest..." (hereafter referred to as "Second Note" if it exists).
104. Plaintiff did not sign any Note on JANUARY 9, 2007.

The [17], [43] Motions state:

... in order to establish that a foreclosure was wrongful, and that the plaintiff is entitled to relief, the plaintiff must establish a prejudicial defect in the foreclosure process. ... Here, Plaintiff has not shown any prejudice: the foreclosure took place because of Plaintiff's default, not because of any action or inaction on the part of Defendants.

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

7

However, the Complaint alleges that there was no default:

> 2. Plaintiff is not in default. Plaintiff has made all agreed payments to the party who was owed.

The [17], [43] Motions state:

> ... In this case, Plaintiff does not allege that she could tender the debt and acknowledged she was delinquent on the Second Loan through her bankruptcy filings.

However, the Complaint alleges:

> 400. Each of the Defendants is not a mortgagee whatsoever, and is otherwise making a completely unsubstantiated claim to the Property. [footnote 2: Tender is not required where the Complaint alleges that the defendant is not a mortgagee "whatsoever." See [48] Order in Case 1:11-cv-00714-JMS-BMK (Seabright, J.). See also Klohs et al. v. Wells Fargo Bank, N.A., Civ. No. 12-00274 JMS-KSC, Order Granting Defendant Wells Fargo Bank N.A.'s Motion to Dismiss (Seabright, J.) (citing Amina v. BONYM (D. Haw. Aug. 9, 2012)).]

The logic of the Defendants' cited cases is based on an assumption, which is alleged in those cases, that the defendant really is the plaintiff's "lender."

By contrast, there is **no** requirement to allege an ability to tender the loan proceeds to maintain a quiet title claim, where the plaintiff alleges that the defendant is not a mortgagee "whatsoever." Perhaps the best discussion of this issue is found in pages 6-12 of the [48] Order denying Motion to Dismiss in Case 1:11-cv-00714-JMS-BMK (Seabright, J):

> The tender requirement does not make sense, however, where the borrower brings a quiet title claim against a party who [allegedly] is not a mortgagee and who otherwise has no interest in the property whatsoever. ... The reasoning of [opposing] cases therefore does not apply where the pleadings specifically assert that the defendant is not a mortgagee and is otherwise making a completely unsubstantiated claim to the property. ... Plaintiffs are not raising a weakness in Defendant's mortgagee status; rather, they are asserting that Defendant is not a mortgagee at all.

8

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

See also <u>Klohs v. Wells Fargo Bank, N.A.</u>, 2012 WL 4758126, at *7 (D. Haw. Oct. 4, 2012).

The [17], [43] Motions state:

Here, the Complaint contends that Plaintiff was harmed insofar as the foreclosure notices and foreclosure sale were invalid and void ab initio. See Cmp., ¶¶ 356-393. However, the issues arising from the foreclosure sale have already been adjudicated in state court and Plaintiff no longer has possession of the Property. RJN, Ex. 27. Thus, under the Rooker-Feldman doctrine, this Court is barred from reviewing the rulings of the Superior Court to determine if they were made in error.

However, <u>Rooker</u> and <u>Feldman</u> are inapplicable. The Second Circuit in Texaco Inc. v. Pennzoil

Co., 784 F.2d 1133 (C.A.2 (N.Y.), 1986) stated the following:

"Again, lower federal courts possess no power whatever to sit in direct review of state court decisions. If [the party seeking the injunction] was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the. [state] appellate courts and ultimately, if necessary, in this Court."
In Feldman, supra, 460 U.S. at 476, 103 S.Ct. at 1311, the Court once again recognized the viability of Rooker, stating:
"The District of Columbia Circuit properly acknowledged that the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings. Review of such determinations can be obtained only in this Court. See 28 U.S.C. Sec. 1257."

Here, Plaintiff is not requesting a review of the state court judgment, which is about

possession ONLY. There are causes of action alleged in the Complaint which have

nothing to do with the state court judgment.

*A COURT MAY NOT TAKE JUDICIAL NOTICE OF THE TRUTH (OR FALSITY)*

*OF PUBLIC RECORDS*

As a threshold matter, the Exhibits 1-28 of which Defendants wish the Court to

take judicial notice are unauthenticated, and should be disregarded.

9

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

The RJN states:

> Federal Rule of Evidence 201 authorizes a court to take judicial notice of facts
> that are "not subject to reasonable dispute" and are either (1) "generally known
> within the trial court's territorial jurisdiction; or (2) can be accurately and readily
> determined from sources whose accuracy cannot reasonably be questioned."

However:

For a fact to be judicially noticed, "indisputability is a prerequisite." Hennessy v. Penril
Datacomm Networks, 69 F.3d 1344, 1354 (7th Cir. 1995). The power to judicially notice facts
"is to be exercised by courts with caution. . . . Every reasonable doubt upon the subject should be
resolved promptly in the negative." Brown v. Piper, 91 U.S. 37, 42-43 (1875).

The factual matters appropriate for judicial notice would be the existence of the public
records in question, and the language used, but not the truth (or falsity) of their contents.

"Taking judicial notice of a document is not the same as accepting the truth of its
contents or accepting a particular interpretation of its meaning." Joslin v. HA.S. Ins. Brokerage,
184 Cal. App. 3d 369, 374 (1986). "[T]he taking of judicial notice of the official acts of a
governmental entity does not in and of itself require acceptance of the truth of factual matters
which might be deduced there from, since in many instances what is being noticed, and thereby
established, is no more than the existence of such acts and not, without supporting evidence,
what might factually be associated with or flow there from." (citations omitted). Mangini v. R. J
Reynolds Tobacco Co., 7 Cal. 4111 1057, 1062 (1994) (emphasis added). While courts can take
judicial notice of public records, they do not take notice of the truth of matters stated therein.
Love v. Wolf, 226 Cal. App. 2d 3 78, 403 (1964). In addition, "when judicial notice is taken of a
document ... the truthfulness and proper interpretation of the document are disputable."

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

StorMedia, Inc. v. Superior Court, 20 Cal. 4111 449, 457, fn. 9 (1999). A California court

considered the scope of judicial review of a recorded document in Poseidon Development, Inc. v.

Woodland Lane Estates, LLC, 152 Cal.App.4th 1106 (2007):

> [T]he fact a court may take judicial notice of a recorded deed, or similar
> document, does not mean it may take judicial notice of factual matters stated
> therein. For example, the First Substitution recites that Shanley 'is the present
> holder of beneficial interest under said Deed of Trust.' By taking judicial notice of
> the First Substitution, the court does not take judicial notice of this fact, because it
> is hearsay and it cannot be considered not reasonably subject to dispute." (Id. at p.
> 1117.)

See also Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding that district

court **improperly** took judicial notice of disputed facts recited within public record documents).

"Courts may take judicial notice of publications introduced to 'indicate what was in the

public realm at the time, not whether the contents of those articles were in fact true.'" Premier

Growth Fund v. Alliance Capital Mgmt., 435 F.3d 396, 401 n.15 (3d Cir. 2001); accord

Heliotrope Gen. Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.118 (9th Cir. 1999) (taking judicial

notice "that the market was aware of the information contained in news articles submitted by the

defendants.").

"These publications meet the standards for admissibility set forth in Federal Rule of

Evidence 201(b). Accordingly, we take judicial notice of them solely as an indication of what

information was in the public realm at the time." Von Saher v. Norton Simon Museum of Art at

Pasadena, 578 F.3d 1016, 1022 (9th Cir. August 19, 2009). Further, "the Museum fails to point

to any authority which holds that a motion to dismiss based on a statute of limitations may be

granted on the basis of facts judicially noticed, rather than facts apparent on the face of the

complaint. ... Unless it is clear that the complaint could not be saved by amendment, dismissal

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

with prejudice and without leave to amend is not appropriate. Accordingly, Saher's complaint should not have been dismissed without leave to amend." Id. at 1031.

In United States v. 14.02 Acres of Land, the District Court took judicial notice of the Department of Energy National Transmission Grid Study (May 2002), and

> "it referred to the report only as background material, without relying on it to resolve any factual dispute.   We therefore conclude that the district court did not abuse its discretion in taking judicial notice of the DOE Study for the limited purpose for which the court considered it."

The case of Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n. 1 (9th Cir 2004) was [107] dismissed with prejudice after [94] notice of voluntary dismissal by the plaintiff. On appeal, the key phrase is:

> [Defendant Las Vegas] Events has filed an **unopposed motion** for judicial notice of an unredacted copy of the licensing agreement in effect at the time the district court ruled on the joinder motion, as well as of the current licensing agreement. We grant the motion. These licensing agreements are documents of the University System, a state entity.

Footnote 1 states:

> The district court record includes only a redacted License Agreement indicating that Events contracted with University System for permission to present the Rodeo at the Center every year from 1993 through 2000. The License Agreement that is currently in effect was not part of the district court record. Events has filed an **unopposed motion** for judicial notice of an unredacted copy of the licensing agreement in effect at the time the district court ruled on the joinder motion, as well as of the current licensing agreement. We grant the motion. These licensing agreements are documents of the University System, a state entity. Under Federal Rule of Evidence 201, we may take judicial notice of the records of state agencies and other **undisputed matters** of public record. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.2001) (explaining that a court may judicially notice matters of public record **unless the matter is a fact** subject to reasonable

12

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

dispute); <u>Kottle v. N.W. Kidney Ctrs.</u>, 146 F.3d 1056, 1064 n. 7 (9th Cir.1998) (holding that state health department records were properly judicially noticed); <u>Mack v. S. Bay Beer Distribs., Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986) (stating that a court may take judicial notice of records and reports of state administrative bodies), overruled on other grounds by <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

<u>Disabled Rights</u> relies on <u>Lee v. City of Los Angeles</u>, which reversed judicial notice:

> More importantly, the district court's decision **to dismiss** plaintiffs' federal claims was rooted in defendants' factual assertions. **In granting defendants' motions, the [district] court** assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, **took judicial notice of the truth of disputed factual matters,** and did not construe plaintiffs' allegations in the light most favorable to plaintiffs. **We therefore also reverse** the district court's dismissal of plaintiffs' § 1983 claims ...

At any rate, the proposition (that "a court may judicially notice matters of public record" such as deed of trust, substitution of trustee, election to sell and other recorded documents) is ambiguous as it is not clear whether the <u>Disabled Rights</u> court took judicial notice of the "matters of public record" (i.e. the existence of the documents) or of the truth of their contents.

To the extent that the contents of Defendants' documents are not alleged in the Complaint, the <u>Branch</u> rule does not apply to those documents. See <u>Branch v. Tunnell</u>, 14 F.3d 449, 453 (9th Cir. 1994):

> ... **documents whose contents are alleged in a complaint** and whose authenticity no party questions, but which are not physically attached to the pleading, may be **considered** in ruling on a Rule 12(b)(6) ...

To "consider" means to examine a document (e.g. to determine whether it is defamatory), not to assume its contents true. <u>Knievel v. ESPN</u>, 393 F.3d 1068 (9th Cir. 2005).

13

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

Here, the contents of the documents at issue are not alleged in the Complaint, therefore the rule of <u>Branch</u> does not apply to those documents.

The Court may take judicial notice of the dates, parties, and legally operative language of these documents, **but not the truth of various factual representations made in the documents**. <u>Permito v. Wells Fargo Bank</u>, 2012 WL 1380322, *2 (N.D. Cal. Apr. 20, 2012).

The Ninth Circuit, in the <u>14.02 Acres</u> case, stated:

[10] The district court also did not abuse its discretion in taking judicial notice of the Department of Energy National Transmission Grid Study (May 2002) ("DOE Study"), which was not included in the pleadings, and referring to it as background material in its order granting the government's motion for judgment on the pleadings. ... Judicial notice is appropriate for records and "reports of administrative bodies." <u>Interstate Natural Gas Co. v. S. Cal. Gas Co.</u>, 209 F.2d 380, 385 (9th Cir. 1954). The district court considered the DOE Study, which is clearly a "report[ ] of [an] administrative bod[y]." Id. Further, it **referred to the report only as background material, without relying on it to resolve any factual dispute. We therefore conclude** that the district court did not abuse its discretion in taking judicial notice of the DOE Study for the limited purpose for which the court considered it.

The Ninth Circuit explicitly stated that its approval of the district court's judicial notice of the public record was because it "referred to the report only as background material, without relying on it to resolve any factual dispute." Here, by contrast, Defendants wish to use the disputed records to resolve a factual dispute.

The extent of the discussion of this issue in <u>Valasquez</u> is:

Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of these documents as they are matters of public record. See <u>W. Fed. Sav. v. Heflin</u>, 797 F.Supp. 790, 792 (N.D. Cal.1992) (taking judicial notice of documents in a county public record, including deeds of trust); see also <u>Mack</u>, 798 F.2d at 1282 (on a

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

motion to dismiss, a court may properly look beyond the complaint to matters of
public record).

The case relied on, <u>Mack v. South Bay Beer Distributors, Inc.</u>, 798 F.2d 1279, 1282 (9th Cir.

1986) was only about "state administrative records" and states:

> South Bay requested the district court to take judicial notice of the state
> administrative records attached to the motion to dismiss as exhibits. … a court
> may take judicial notice of facts outside the pleadings. <u>Sears, Roebuck & Co. v.
> Metropolitan Engravers, Ltd.</u>, 245 F.2d 67, 70 (9th Cir.1956); 5 C. Wright & A.
> Miller, Federal Practice & Procedure, Sec. 1363 at 659-60 (1969). [footnote:
> Mack, himself, relied on this precedent in requesting the district court to take
> judicial notice of the same administrative records in opposing the motion to
> dismiss his pendent state law claim.] Moreover, a court may take judicial notice
> of "records and reports of administrative bodies." <u>Interstate Natural Gas Co. v.
> Southern California Gas Co.</u>, 209 F.2d 380, 385 (9th Cir.1953).

<u>Heflin</u> relies on <u>Grant v. Aurora Loan Servs., Inc.</u>, No. CV 09-08174, 20 2010 WL 3517399, at

*3 (C.D. Cal. Sept. 10, 2010) (citing numerous cases where the court took judicial notice of

assignments of deeds of trust, notices of default, and notices of trustee's sale). <u>Grant</u> (in which

there was no dispute about the trustee's deed, and the other documents noticed were certificates

of incorporation, certificates of good standing, and lists of corporate officers) relies on <u>14.02</u>

<u>Acres</u>, and states:

> Aurora requests that the court take judicial notice of the following documents: the
> trustee's deed on sale for the Woodland Hills property, the Federal Stock Charter
> for Lehman Brothers Bank FSB, the Office of Thrift Supervision's Order
> Approving Aurora Loan Services as an Operating Subsidiary of Lehman Brothers
> Bank, the Secretary's Certificate attesting that Lehman Brothers Bank FSB
> changed its name to Aurora Bank FSB, a certification by the Delaware Secretary
> of the State authenticating the certificate of incorporation for Aurora Loan
> Services Inc., filed May 15, 1997, Aurora's certificate of conversion from a
> corporation to an LLC, and a certificate of amendment changing Aurora's
> Certificate of Formation to reflect its designation as a limited liability company.

15

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

The [Grant] court likewise takes judicial notice of the documents defendants proffer regarding Aurora's incorporation and conversion to an LLC - the Federal Stock Charter for Lehman Brothers Bank FSB, the Office of Thrift Supervision's Order Approving Aurora Loan Service as an Operating Subsidiary of Lehman Brothers Bank, the Secretary's Certificate attesting that Lehman Brothers Bank FSB changed its name to Aurora Bank FSB, the certification by Delaware Secretary of State authenticating the certificate of incorporation for Aurora Loan Services Inc. filed May 15, 1997, Aurora's certificate of conversion from a corporation to an LLC, and the certificate of amendment recording the change of Aurora's corporate form and designation in its Certificate of Formation. See FED. R. EVID. 201(b) (stating that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); see also McCall v. Scott, 239 F.3d 808, 814 n. 3 (6th Cir. 2001) ("[W]e take judicial notice of the Restated Certificate of Incorporation"); McMichael v. U.S. Filter Corp., No. ED CA 99-182VAP, 2001 WL 418981, *8 (C.D. Cal. Feb. 23, 2001) (taking judicial notice of a certificate of incorporation filed in Delaware); Redding v. Freeman Products, Inc., No. 94 C 398, 1995 WL 410922, *2 (N.D. Ill. July 10, 1995) (taking judicial notice of certificates of good standing filed with the Illinois Secretary of State); Access 4 All v. Oak Spring, Inc., No. 504CV75OCGRJ, 2005 WL 1212663, *2 n. 16 (M.D. Fla. May 20, 2005) (taking judicial notice of the records of the Florida Department of State, Division of Corporations, which reflected that one plaintiff was an officer and director of the other); In re Teledyne Defense Contracting Derivative Litigation, 849 F.Supp. 1369, 1383 (C.D. Cal. 1993) (stating that "[p]laintiffs' claim for negligent breach of fiduciary duty against the Directors is barred by the Corporation's Certificate of Incorporation (of which this Court may take judicial notice)"); see also Banks v. Consumer Home Mortgage, Inc., No. 01-CV-8508 (ILG), 2003 WL 21251584, *6 n. 7 (E.D.N.Y. Mar. 28, 2003) ("Plaintiffs submitted a public record on file with the Secretary of State for Georgia, where CHM lists Michael Ashley as the Chief Financial Officer of CHM. This Court can take judicial notice of this official filing by CHM").

Footnote 37 of Grant states:

As the complaint refers to or necessarily relies on records related to the sale of plaintiff's property, and as neither party disputes the authenticity of the records, they may also be considered under the incorporation by reference doctrine.

16

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

***DOCUMENTS ARE NOT FACTS***

Defendants have requested the Court to take judicial notice, not of "facts" (F.R.E. 201), but of documents. See <u>Crawford v. Countrywide Home Loans, Inc.</u>, 647 F.3d 642 (7th Cir. July 21, 2011) (judicial notice declined because the movants "sought judicial notice not of particular discrete facts, but of a number of whole documents.") Yet Defendants do not explain what factual propositions are supposed to be supported by these documents.

The Court may take judicial notice of the existence of documents in the public record, and of the language of those documents. The Court may not, however, at this stage, take judicial notice of the truth or falsity of the contents of those documents.

The Federal Rules of Evidence, Rule 201(b) states:

The court may judicially notice a fact that is not subject to reasonable dispute because it:
(1) is generally known within the trial court's territorial jurisdiction; or
(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

The **existence** and **language** of the documents within the public record can be accurately and readily determined by consulting the records maintained by the County Recorder.

Long before the effective date of the Federal Rules, a controversy raged on whether judicial notice of adjudicative facts should be confined to substantially indisputable facts or to facts that are unlikely to be disputed. Even the evidence greats were divided on the issue: Professors Morgan and McCormick argued that judicial notice should be confined to indisputables[2] while Professors Thayer, Wigmore, and Davis contended that judicial notice

---

[2] See MCCORMICK'S HANDBOOK I, supra note 9, § 330, at 710·11 (taking issue with the Wigmore-Thayer view of judicial notice and arguing that "the weight of reason and the prevailing authority" dictate that judicial notice be

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

should extend to facts that are somewhat less absolute.[3] Both sides muster cogent arguments to

support their positions and both contend that the weight of existing case law supports their

views.[4] A substantial split also exists among the states on this issue.[5] In providing that "[a]

judicially noticed fact must be one not subject to reasonable dispute,"[6] the Federal Rules

followed the Morgan-McCormick view requiring substantial indisputability. The Advisory

Committee's note on the federal rule stated that this more stringent standard was based upon "the

theory that these considerations call for dispensing with traditional methods of proof only in

clear cases."[7]

In Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005), the issue was whether a certain

photograph and caption of Evel Knievel, which included the word "pimp" and which was posted

on ESPN's website, was defamatory – not whether the contents of the documents incorporated

by reference were true.[8]

Plaintiff hereby questions the authenticity of all of Defendants' preferred documents.

The court should at most take judicial notice of the existence of Defendant's documents

and of the language used, but should not assume the truth of any of their contents.

---

confined to indisputable facts); John T. McNaughton, Judicial Notice-Excerpts Relating to the Morgan-Wigmore
Controversy, 14 VAND. L. Rev. 779, 779 (1961) (noting that Morgan's view restricts judicial notice to "patently
indisputable" matters).

[3] See Kenneth C. Davis, A System of Judicial Notice Based on Fairness and Convenience, in PERSPECTIVES OF
LAW 69 (Roscoe Pound et al. eds., 1964), at 76-78 (propounding the Wigmore-Thayer view and arguing that trial
judges should entertain evidence which contradicts judicially noticed facts); McNaughton, supra note 48, at 805
(concluding that the Wigmore-Thayer view allows courts to judicially notice matters which are "somewhat
disputable but unlikely to be disputed").

[4] See McNaughton, supra note 48, at 796 n.3.

[5] See Carla A. Neely, Note, Judicial Notice: Rule 201 of the Federal Rules of Evidence, 28 U. FLA. L. Rev. 723,
758 nn.203-04 (1976) (citing decisions of several states).

[6] FED. R. EVID. 201(b).

[7] FED. R. EVID. 201 advisory committee's note, subdiv. (b).

[8] Knievel is "an odd case for a court to cite for the proposition that it could take judicial notice when (a) the majority
didn't explicitly take judicial notice; and (b) the dissent had a pretty good argument that the majority could not have
taken judicial notice." –Asst. Prof. Colin Miller, John Marshall School of Law (Chicago)

18

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE

The key portion of <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir.2001) (explaining that a court may judicially notice matters of public record unless the matter is a fact subject to reasonable dispute) is:

In granting defendants' motions, the court assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, took judicial notice of the truth of disputed factual matters, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs. We therefore also reverse the district court's dismissal of plaintiffs'§ 19S3 claims alleging violations of the First, Fourth, and Fourteenth Amendments on these independent grounds. ...

Here, defendant NYSDCS attached several exhibits to its motion to dismiss, including declarations from three NYSDCS employees. ...

In granting defendants' motions to dismiss, ... the court stated "this case apparently presents the relatively unique situation of an innocent person who attempted to pass himself off as an escaped prisoner." Neither the Original Complaint nor the First Amended Complaint contain any allegation that Kerry Sanders ever told anyone that he was Robert Sanders, let alone that he wanted to pass himself off as Robert Sanders. Thus, for purposes of the Rule 12(b)(6) motions to dismiss, there was no basis for the district court to make the factual finding that Kerry Sanders "attempted to pass himself off as [the] escaped prisoner" Robert Sanders.

... the district court also erred by taking judicial notice of disputed matters. The court took judicial notice of two documents: (1) the Waiver of Extradition form, according to which Kerry Sanders purportedly "intelligently, knowingly, and voluntarily" waived his right to challenge his extradition and admitted being Robert Sanders; and (2) the transcript of the extradition hearing at which Kerry Sanders stated that he purportedly understood the rights he was giving up by signing the waiver.

... the district court had authority under Rule 201 to take judicial notice of the fact of the extradition hearing, the fact that a Waiver of Extradition was signed by Kerry Sanders, and the fact that Kerry Sanders purportedly waived his right to challenge his extradition to New York as "Robert Sanders."

But the court did more than take judicial notice of undisputed matters of public record. The court took judicial notice of disputed facts stated in public records. Indeed, the court relied on the validity of Kerry Sanders's Waiver of Extradition in dismissing plaintiffs' § 1983 claims at the pleading stage. As the

19

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

district court stated: "Sanders personally waived his right to contest extradition and informed the court and counsel that he was, in fact, the Robert Sanders sought in New York." ...

Here, the district court incorrectly took judicial notice of the validity of Kerry Sanders's waiver, which was as yet unproved. ...

Accordingly, we hold that the district court erred in granting the City's motion to dismiss plaintiffs' § 1983 claims under the First, Fourth, and Fourteenth Amendments by relying on extrinsic evidence and by taking judicial notice of disputed matters of fact to support its ruling.

The disputed fact in <u>Lee</u> was whether Kerry Sanders' waiver was valid. There is no indication that the <u>Lee</u> plaintiff disputed that fact. Therefore, <u>Lee</u> contradicts the principle urged by Defendants: that judicial notice supposedly must be taken unless the opposing party puts some contrary evidence before the court—within the time limit for a response to a motion and without opportunity for discovery, no less.

### Conclusion

For the foregoing reasons, and others, the [17] Motion and the [43] Motion should be denied, and this case should proceed forward; or in the alternative, leave to amend should be granted.

Executed on this 28th day of August, 2019.

_/s/_ _Cecilia Mangaoang_
    Cecilia Mangaoang
    1765 Landess Ave, PMB #323
    Milpitas, CA 95035
    (408) 876-9950

20

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS AND [43-1] REQUEST FOR JUDICIAL NOTICE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that upon the date last written below I served a true

copy of the foregoing upon the following parties by U.S. first class mail and/or email:

**Special Default Services, Inc.**
c/o Fabio Ramano Cabezas
Burke, Williams & Sorensen LLP
1851 East First Street
Suite 1550
Santa Ana, CA 92705-4067
949-863-3363
949-863-3350 (fax)
fcabezas@bwslaw.com

**Select Portfolio Servicing, Inc.**
**Wilmington Trust, NA, Successor Trustee to Citibank, N.A. as Trustee, for the Benefit of**
**Registered Holders of Structured Asset Mortgage Investments II Trust 2007-AR3,**
**Mortgage Pass-Through Certificates**
c/o Bryan Lakeith Hawkins
Stoel Rives LLP
500 Capitol Mall
Suite 1600
Sacramento, CA 95814
916-447-0700
916-447-4781 (fax)
bryan.hawkins@stoel.com

**Newport Beach Holdings, LLC**
**Trinity Financial Services, LLC**
c/o Matthew S. Henderson
Parker Ibrahim & Berg LLC
695 Town Center Drive, 16th Floor
Costa Mesa, CA 92626
714-361-9550
714-784-4190 (fax)
matthew.henderson@piblaw.com

Executed on this __28__ day of __August_, 2019.     _/s/_____
                                                            Armida Mangaoang

PLAINTIFF'S RESPONSE TO [17], [43] NEWPORT, TRINITY MOTIONS TO DISMISS
AND [43-1] REQUEST FOR JUDICIAL NOTICE