UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CECILIA MANGAOANG,

         Plaintiff,

    v.

SPECIAL DEFAULT SERVICES, INC., et al.,

         Defendants.

Case No. 19-cv-03125-SVK

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS AND
REQUESTS FOR JUDICIAL NOTICE
AND DENYING PLAINTIFF'S
MOTION FOR LIS PENDENS**

Re: Dkts. No. 2, 3, 17, 19, 31

## I.    INTRODUCTION

Pro se Plaintiff Cecilia Mangaoang ("Plaintiff") brings this action against Defendants Trinity Financial Services, LLC ("TFS"), Newport Beach Holdings, LLC ("NBH"), Wilmington Trust ("WT"), Select Portfolio Servicing, Inc. ("SPS"), and Special Default Services, Inc. ("SDS") (collectively, "Defendants"). Dkt. 1 ("Complaint"). Defendants have moved to dismiss Plaintiff's claims. Dkt. 17 ("TFS & NBH MTD"); Dkt. 19 ("WT & SPS MTD"); Dkt. 31 ("SDS MTD"); Dkt. 44 ("SDS Joinder to TFS & NBH MTD"). Defendants also filed accompanying Requests for Judicial Notice. Dkts. 17-1, 17-2 ("TFS & NBH RJN"); Dkt. 19-1 ("WT & SPS RJN"); Dkts. 32-1 - 32-7 ("SDS RJN").

Shortly after filing the Complaint, Plaintiff filed a motion to record a lis pendens. Dkts. 2, 3. Defendants TFS and NBH oppose Plaintiff's motion to record. Dkt. 11.

All parties have consented to the jurisdiction of a magistrate judge. Dkts. 18, 21, 29, 36. Based on the Parties' submissions and the relevant law, the **GRANTS** Defendants' motions to dismiss and **DENIES** Plaintiff's motion for a lis pendens for the reasons discussed below.[1]

---

[1] The Court finds the matter suitable for decision without oral argument pursuant to Civ. L.R. 7-1(b).

1    **II.    BACKGROUND** [2]

2        **A. Plaintiff's Loan History**

3            **1.    First Loan**

4        On or about January 9, 2007, Plaintiff obtained a mortgage loan in the principal amount of

5    $524,000.00 (the "First Loan") from Aidan West Financial Group ("Aidan").  TFS & NBH RJN

6    Ex. 1; WT & SPS RJN Ex. A.  Repayment of this loan was secured by a deed of trust ("First

7    DOT") that encumbered real property located at 2901 Capewood Lane, San Jose, California 95132

8    ("Property").  *Id*.  On January 18, 2007, the First DOT was recorded as instrument 19268025.  *Id*.;

9    s*ee also* Complaint ¶ 80.  The instrument identified Mortgage Electronic Registration Systems,

10   Inc. ("MERS") as the beneficiary (in its capacity as nominee for Aidan), Fidelity National Title as

11   the trustee, and Plaintiff as the borrower and trustor.  TFS & NBH RJN Ex. 1; WT & SPS RJN

12   Ex. A.  The First DOT contains Plaintiff's signature and is notarized.  *Id*.  On March 20, 2009,

13   MERS assigned the First DOT to WT.  WT & RJN Ex. C; *see also* Complaint ¶ 149.

14           **2.    Second Loan**

15       On or about January 9, 2007, Plaintiff obtained a second loan in the amount of

16   $131,000.00 (the "Second Loan") from Aidan.  TFS & NBH RJN Ex. 2; WT & SPS RJN Ex. B.

17   This loan was secured by a junior deed of trust ("Second DOT") that encumbered the Property.

18   *Id*.  On January 18, 2007, the Second DOT was recorded as instrument 19268026.  *Id*; *see also*

19   Complaint ¶ 95.  This instrument identified MERS as the beneficiary (in its capacity as nominee

20   for Aidan), Fidelity National Title as the trustee, and Plaintiff as the borrower and trustor.  TFS &

21   NBH RJN Ex. 2; WT & SPS RJN Ex. B.  The Second DOT contains Plaintiff's signature and is

22   notarized.  *Id*.  On or about July 21, 2015, MERS assigned the Second DOT to NBH ("First

23   Assignment").  TFS & NBH RJN Ex. 3; WT & SPS RJN Ex. D; *see also* Complaint ¶ ¶ 24, 185.

24   The First Assignment was recorded on December 17, 2015 as instrument 23175056.  TFS & NBH

25   RJN Ex. 3; WT & SPS RJN Ex. D.

26       In early 2016, Plaintiff alleges she completed a loan modification application for the

27

28   [2] Although Defendants filed three separate motions to dismiss, their arguments overlap.
Accordingly, where appropriate, this order addresses Defendants' arguments jointly.

1    Second Loan.  Complaint ¶ 224.  Plaintiff alleges that NBH never responded to the application.

2    *Id*. ¶ 225.

3         On or about September 9, 2016, NBH substituted SDS as trustee of the Second DOT.

4    TFS & NBH RJN Ex. 5; *see also* Complaint ¶ ¶ 26, 229.  This substitution was recorded as

5    instrument 23426665.  TFS & NBH RJN Ex. 5.  Also on or about September 9, 2016, a Notice of

6    Default and Election to Sell Under Deed of Trust ("NOD") was recorded as instrument 23426666.

7    TFS & NBH RJN Ex. 6; WT & SPS RJN Ex. E; *see also* Complaint ¶ ¶ 27, 266.  The NOD

8    indicated that Plaintiff had been in default since July 1, 2008 and that Plaintiff should contact

9    NBH, care of SDS, with questions.  TFS & NBH RJN Ex. 6; WT & SPS RJN Ex. E.  The NOD

10   was accompanied by a "Declaration of Compliance" as required by Cal. Civ. Code § 2923.55(c).

11   *Id*.  Plaintiff alleges that her loan modification was pending at this time.  Complaint ¶ 266.

12        On or about January 6, 2017, a Notice of Trustee's Sale ("First Notice") was recorded as

13   instrument 19268026.  TFS & NBH RJN Ex. 7.  The date of the sale was listed as February 1,

14   2017.  *Id*.  On or about September 6, 2018, a second Notice of Trustee's Sale ("Second Notice")

15   was recorded as instrument 24018268.  TFS & NBH RJN Ex. 8; WT & SPS RJN Ex. F; *see also*

16   Complaint ¶ ¶ 28, 356.  The date of the sale was listed as October 5, 2018.  TFS & NBH RJN Ex.

17   8; WT & SPS RJN Ex. F.

18        On or about September 12, 2018, NBH assigned the Second DOT to TFS

19   ("Second Assignment"), which was recorded as instrument 24022209.  TFS & NBH RJN Ex. 4;

20   *see also* Complaint ¶ ¶ 25, 323.  On November 15, 2018, a trustee's deed upon sale was recorded

21   as instrument 24064356 and reflected that the Property was sold to TFS via public auction on

22   November 5, 2018.  TFS & NBH RJN Ex. 9; WT & SPS RJN Ex. G; Complaint ¶ ¶ 29, 360.

23                    **3.  Plaintiff's Allegations Regarding the Loans**

24        Plaintiff asserts a range of allegations in her Complaint, several of which are contradicted

25   by judicially noticeable documents.  For example, Plaintiff alleges that she never took out any

26   loans.  Complaint ¶ ¶ 114-15.  The First and Second Deeds, accompanied by their riders, indicate

27

28

3

that Plaintiff did, in fact, take out loans on the Property. [3]  TFS & NBH RJN Ex. 1, 2.  Similarly,

Plaintiff asserts that neither the First nor Second Deed bear her signature.  Complaint ¶¶ 446-47.

Copies of the recorded deeds, however, feature Plaintiff's notarized signature.  TFS & NBH RJN

Ex. 1 at 13, Ex. 2 at 6.  Plaintiff also makes a number of unsubstantiated allegations.  For example,

Plaintiff repeatedly alleges that recorded documents pertinent to this case are invalid because, *inter

alia*: (1) the person signing their name as a notary was not actually a notary; (2) the signatory[4] did

not sign in the presence of a notary; (3) the signatory did not read the document and was not aware

of its contents before it was notarized; (4) the signatory was not personally known to the notary

and never produced identification for the notary; and (5) the log book of the notary will show that

the document was never signed or notarized.  *See, e.g.,* Complaint ¶¶ 168-73.  Plaintiff offers no

facts to support these allegations.  Instead, Plaintiff argues in her oppositions that "at this Motion

to Dismiss stage, the allegations of the Complaint are to be taken as true" and, as a result,

repeatedly points to allegations made in her Complaint as responses to Defendants' arguments.

Opp. to TFS & NBH MTD at 6, 7.

### B.  Plaintiff's Bankruptcy Proceedings

Plaintiff has initiated four bankruptcy proceeding and one adversary proceeding since

March 2009.  Each proceeding is discussed below.

### 1.  March 2009 Filing

On March 11, 2009, Plaintiff filed a voluntary petition for Chapter 13 bankruptcy in the

United States Bankruptcy Court for the Northern District of California, which was docketed at

09-51662 ("First Bankruptcy"). TFS & NBH RJN Ex. 10.  On March 31, 2009, the bankruptcy

court entered an order of dismissal in the First Bankruptcy because Plaintiff failed to file the

required documents. TFS & NBH RJN Ex. 11.

////

---

[3] Inconsistent with her "no loans" allegations, Plaintiff states that NBH did not credit all of her loan payments and that NBH did not respond to her loan modification application.
Complaint ¶¶ 147, 224-25.

[4] The signatory Plaintiff refers to in this portion of the Complaint is Greg Allen, the Vice President of MERS.  Complaint ¶¶ 168-73.

**2. December 2016 Filing**

On December 8, 2016, Plaintiff filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of California, which was docketed at 16-53447 ("Second Bankruptcy"). TFS & NBH RJN Ex. 12. Under Part 2, Section 9 of the petition, Plaintiff marked "No" to the question "Have you filed for bankruptcy within the last 8 years?" *Id*. Plaintiff identified NBH, SPS, and SDS as creditors of the estate. *Id*. Plaintiff did not identify any claims against TFS, NBH, WT, SPS, or SDS. *Id*. On December 23, 2016, the bankruptcy court entered an order of dismissal in the Second Bankruptcy for Plaintiff's failure to comply. TFS & NBH RJN Ex. 13.

**3. January 2017 Filing**

On January 31, 2017, Plaintiff filed a third voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of California, which was docketed at 17-50208 ("Third Bankruptcy"). TFS & NBH RJN Ex. 14. Under Part 2, Section 9 of the form, Plaintiff again marked "No" to the question "Have you filed for bankruptcy within the last 8 years?" *Id*. In this filing, Plaintiff indicated that she was represented by counsel. *Id*. In Part 4 of her Schedule A/B, Plaintiff was asked if she had "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." *Id*. Plaintiff marked "No." *Id*. Plaintiff was also asked if she had "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." *Id*. Plaintiff again marked "No." *Id*.

Plaintiff again identified NBH, SPS, and SDS as creditors of the estate. TFS & NBH RJN Ex. 14. Additionally, in her Schedule D, Plaintiff identified NBH as a secured creditor of the Property and did not mark the box indicating that the claim was disputed. *Id*. Plaintiff was asked to declare, under penalty of perjury, that the information contained in her bankruptcy schedules was true and correct. *Id*. She signed and dated this declaration without identifying any claims against TFS, NBH, WT, SPS, or SDS. *Id*.

On March 3, 2017, NBH filed a proof of claim in the amount of $273,157.28, with $158,376.97 listed in pre-petition arrears. TFS & NBH RJN Ex. 15. On May 1, 2017, Plaintiff filed a motion to value the Second Loan at $0.00. TFS & NBH RJN Ex. 16. Plaintiff filed an

1  accompanying declaration wherein she acknowledged SPS's interest in the First Loan and NBH's

2  interest in the Second Loan. *Id*. On May 31, 2018, the bankruptcy court entered an order of

3  dismissal in the Third Bankruptcy for Plaintiff's failure to comply with the court's Order

4  Extending Confirmation Deadline. TFS & NBH RJN Ex. 17.

### 4. October 2018 Filing

6  On October 4, 2018, Plaintiff filed a fourth voluntary petition for Chapter 13 bankruptcy in

7  the United States Bankruptcy Court for the Northern District of California, which was docketed at

8  18-52245 ("Fourth Bankruptcy"). TFS & NBH RJN Ex. 18; WT & SPS RJN Ex. I. Under Part 2,

9  Section 9 of the form, Plaintiff marked "Yes" to the question "Have you filed for bankruptcy

10 within the last 8 years?" and listed the Second Bankruptcy and Third Bankruptcy. *Id*. Plaintiff

11 also indicated that she was represented by counsel. *Id*.

12 In Part 4 of her Schedule A/B, Plaintiff was asked if she had "[c]laims against third parties,

13 whether or not you have filed a lawsuit or made a demand for payment." TFS & NBH RJN

14 Ex. 18; WT & SPS RJN Ex. I. Plaintiff marked "No" to the question. *Id*. Plaintiff was also asked

15 if she had "[o]ther contingent and unliquidated claims of every nature, including counterclaims of

16 the debtor and rights to set off claims." *Id*. Plaintiff marked "No" to this question as well. *Id*. In

17 this filing, Plaintiff again identified NBH and SPS as creditors of the estate. *Id*. In Part 1 of her

18 Schedule D, Plaintiff identified NBH and SPS as secured creditors, affirmed that their liens were

19 based on agreements that Plaintiff made, and did not mark the box indicating that their claims

20 were disputed. *Id*. Plaintiff was asked to declare, under penalty of perjury, that the information

21 contained in her bankruptcy schedules was true and correct. *Id*. She signed and dated this

22 declaration without identifying any claims against TFS, NBH, WT, SPS, or SDS. *Id*.

23 On January 7, 2019, Plaintiff filed an Amended Chapter 13 plan. WT & SPS RJN Ex. K.

24 In her Amended Plan, Plaintiff identified TFS, NBH, and WT as creditors. *Id*. She did not

25 identify any claims against TFS, NBH, WT, SPS, or SDS. *Id*. On January 16, 2019, the

26 bankruptcy trustee filed a motion to dismiss for Plaintiff's failure to prosecute. TFS & NBH RJN

27 Ex. 19.

28 On February 26, 2019, Plaintiff filed a Third Amended Chapter 13 plan. WT & SPS RJN

1    Ex. L.  In her Third Amended plan, Plaintiff again identified TFS, NBH, and WT as creditors.  *Id*.

2    Plaintiff specifically identified WT's claim as the "First Mortgage" and TFS' claim as the "Second

3    Mortgage."  *Id*.  Plaintiff did not identify any claims against TFS, NBH, WT, SPS, or SDS.  *Id*.

4    On March 25, 2019, the bankruptcy court granted the bankruptcy trustee's motion to dismiss the

5    Fourth Bankruptcy.  TFS & NBH RJN Ex. 19.

### 5.  December 2018 Adversary Complaint

7    During the pendency of the Fourth Bankruptcy, Plaintiff filed an adversary complaint

8    against TFS, NBH, and SDS in the United States Bankruptcy Court for the Northern District of

9    California.  TFS & NBH RJN Ex. 20.  This complaint was docketed at 18-5062, and the amended

10   complaint included the following causes of action: (1) quiet title; (2) violations of the Fair Debt

11   Collection Practices Act; (3) cancellation of instruments; and (4) wrongful foreclosure.  Dkt. 32-1

12   ("SDS RJN Ex. 20") ¶¶ 101-25.

13   On January 17, 2019, Defendants filed their answers to the amended adversary complaint.

14   TFS & NBH RJN Ex. 21; TFS & NBH RJN Ex. 22.  On February 11, 2019, Plaintiff filed a

15   motion for leave to file a second amended complaint.  TFS & NBH RJN Ex. 23.  The second

16   amended complaint included a new defendant (Plaintiff's bankruptcy counsel from the January

17   2017 and October 2018 filings), and two new causes of action for avoidance of a wholly

18   unsecured lien and negligence.  *Id*. ¶¶ 312-37.  On March 19, 2019, the bankruptcy court issued

19   an order to show cause for Plaintiff to show why the adversary proceeding should not be

20   dismissed for failure to prosecute.  TFS & NBH RJN Ex. 24.  On March 26, 2019, Defendants

21   filed a memorandum requesting that the bankruptcy court dismiss the adversary proceeding.

22   TFS & NBH RJN Ex. 25.  The adversary proceeding was subsequently dismissed on April 23,

23   2019.  TFS & NBH RJN Ex. 26.

### C.  Other Lawsuits

### 1.  December 2018 Unlawful Detainer Action

26   On December 7, 2018, TFS filed an unlawful detainer action against Plaintiff in the

27   Superior Court of Santa Clara, which was docketed at 18CV339119.  Dkt. 46-1, Ex. B.  On March

28   14, 2019, the court entered judgment in favor of TFS and granted it possession to the Property.

1    TFS & NBH RJN Ex. 27; Dkt. 32-3 ("SDS RJN Ex. 28"). Plaintiff was subsequently evicted on

2    May 21, 2019. Complaint ¶ 4.

### 2.    March 2019 State Court Action

4         On March 12, 2019, Plaintiff filed an action against TFS, NBH, and SDS in the Superior

5    Court of Santa Clara. Dkt. 32-5 ("SDS RJN Ex. 30"). This action was docketed at 19CV344274.

6    *Id.* In this action, Plaintiff brought causes of action for the following: (1) quiet title; (2) violations

7    of the Rosenthal Fair Debt Collection Practices Act; (3) cancellation of instruments; and (4)

8    wrongful foreclosure. *Id.* ¶¶ 300-53. On June 24, 2019, Plaintiff indicated that she intended to

9    withdraw the state court action.[5] Dkt. 16 at 2.

### 3.    June 2019 Federal Action

11        On June 5, 2019, Plaintiff brought the instant action against Defendants. Complaint at 1.

12   The instant Complaint asserts four causes of action against all Defendants: (1) quiet title; (2)

13   violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"); (3) two

14   counts of replevin; and (4) defamation. Complaint ¶¶ 401-44, 485-511. Plaintiff also brings a

15   wrongful foreclosure claim against SDS, TFS, and NBH. *Id.* ¶¶ 475-84. Additionally, Plaintiff

16   brings a cancellation of instruments claim against SDS and NBH. *Id.* ¶¶ 445-74.

### III.    REQUESTS FOR JUDICIAL NOTICE

18        In conjunction with their motions to dismiss, Defendants filed Requests for Judicial Notice

19   of documents recorded in Santa Clara County, documents filed in Plaintiff's four bankruptcy cases

20   and the adversary action, documents from the 2018 unlawful detainer action, and documents from

21   the 2019 state court action. TFS & NBH RJN Ex 1-28; WT & SPS RJN Ex. A-L; SDS RJN Ex.

22   20, 27-32. Plaintiff opposes TFS & NBH's Requests for Judicial Notice on the grounds that: (1)

23   the documents are unauthenticated; (2) the contents of the documents are not alleged in the

24   Complaint and thus cannot be incorporated by reference; and (3) judicial notice can only be taken

25   of facts, not the truth or falsity of the statements contained within the documents that are judicially

26   noticed. Dkt. 54 ("Opp. to TFS & NBH MTD") at 7-20.

27

28   _____
     [5] Court records indicate that the matter was dismissed without prejudice on August 7, 2019.

8

1    The Court generally may not look beyond the four corners of a complaint in ruling on

2    a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by

3    reference and any relevant matters subject to judicial notice.  *See Swartz v. KPMG LLP,* 476 F.3d

4    756, 763 (9th Cir. 2007) (per curiam); *Lee v. City of L.A.,* 250 F.3d 668, 688-89 (9th Cir. 2001).

5    The Court may take judicial notice of matters that are "not subject to reasonable dispute" and "(1)

6    generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

7    determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

8    Proper subjects of judicial notice when ruling on a motion to dismiss include court documents

9    already in the public record and documents filed in other courts and publicly accessible websites.

10   *See Holder v. Holder,* 305 F.3d 854, 866 (9th Cir. 2002); *see also Caldwell v. Caldwell,* No.

11   C 05-4166 PJH, 2006 WL 618511, at \*4 (N.D. Cal. March 13, 2006).

12   The Court finds that the recorded documents are not subject to reasonable dispute and are

13   proper subjects of judicial notice.  *See Quinto v. JPMorgan Chase Bank,* No. 11-CV-02920-LHK,

14   2011 WL 6002599, at \*4-5 (N.D. Cal. Nov. 30, 2011) (taking judicial notice of recorded

15   documents); *Freitas v. Bank of Am. N.A.,* No. C 19-03347 WHA, 2019 WL 5872415, at \* 3

16   (N.D. Cal. Nov. 11, 2019), *appeal docketed*, 19-17394 (9th Cir. Nov. 25, 2019) (same).  The

17   recorded documents are also incorporated into the Complaint by reference, as Plaintiff repeatedly

18   refers to them.  *See, e.g.*, Complaint ¶ ¶ 5, 6, 12, 24-30, 79-111.  The Court further finds that the

19   court records, including those concerning Plaintiff's bankruptcy cases, the adversary complaint,

20   the unlawful detainer action, and the state court action, are also proper subjects of judicial notice.

21   *See Quinto,* 2011 WL 6002599, at \*4-5 (taking judicial notice of court filings).  Accordingly, the

22   Court **GRANTS** Defendants' Requests for Judicial Notice.

23       **IV.      LEGAL STANDARD FOR MOTIONS TO DISMISS**

24   Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it

25   fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

26   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

27   face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard

28   requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

1  has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not

2  require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and

3  conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

4  550 U.S. at 555, 570. Rather, the plaintiff must allege facts sufficient to "raise a right to relief

5  above the speculative level." *Id.* at 555.

6        To implement this standard, the Ninth Circuit has recognized a two-step process for

7  evaluating pleadings:

8       First, to be entitled to the presumption of truth, allegations in a complaint or
     counterclaim may not simply recite the elements of a cause of action, but must

9       contain sufficient allegations of underlying facts to give fair notice and to enable the
     opposing party to defend itself effectively. Second, the factual allegations that are

10       taken as true must plausibly suggest an entitlement to relief, such that it is not unfair
     to require the opposing party to be subjected to the expense of discovery and

11       continued litigation.

12  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In its review, a court must liberally construe

13  pro se pleadings and hold such complaints "to less stringent standards than formal pleadings

14  drafted by lawyers." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Erickson v.*

15  *Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Furthermore, for

16  purposes of ruling on a Rule 12(b)(6) motion, a court must "accept factual allegations in the

17  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

18  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a

19  court need not accept allegations contradicted by judicially noticeable facts. *See Shwarz v. United*

20  *States*, 234 F.3d 428, 435 (9th Cir. 2000). Additionally, a court need not "accept as true

21  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

22  inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Indeed, "a

23  plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot

24  prevail on h[er] ... claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997)

25  (internal quotation marks and citation omitted).

26  ////

27  ////

28  ////

10

**V.   DISCUSSION**

Defendants TFS & NBH offer the following arguments in support of their motion to dismiss: (1) Plaintiff's claims are barred by judicial estoppel; (2) Plaintiff's claims are barred by res judicata; (3) Plaintiff's claims are barred by Plaintiff's violation of Fed. R. Civ. P. 8; and (4) all of Plaintiff's claims fail to state facts sufficient to constitute a claim for relief.  TFS & NBH MTD at 2.  Defendant SDS joins Defendants TFS & NBH's arguments and further argues: (1) Plaintiff's claims are barred by judicial estoppel; (2)  Plaintiff's claims are barred by res judicata; (3) Plaintiff's first, third, fourth, fifth, and sixth claims are barred by collateral estoppel; (4) Plaintiff's claims are barred by Fed. R. Civ. P. 8 and 9(b); and (5) all of Plaintiff's claims fail to state a claim upon which relief may be granted.  SDS MTD at 2.  Defendants WT & SPS argue that Plaintiff's claims are subject to dismissal because: (1) Plaintiff's claims are barred by judicial estoppel; and (2) all of Plaintiff's claims fail as a matter of law.  WT & SPS MTD at 11-18.

Plaintiff opposes all three motions with substantially similar arguments: (1) in 2017 and 2018, Plaintiff was unaware of the present claims; (2) Plaintiff is entitled to state separate claims or defenses, regardless of consistency, under Fed. R. Civ. P. 8(d)(3); (3) where there are errors, Plaintiff simply made a mistake; and (4) Plaintiff should be given leave to amend to correct the deficiencies Defendants identify in her Complaint.  Opp. to TFS & NBH MTD at 3-9; Dkt. 46 ("Opp. to SDS MTD") at 2-10; Dkt. 50 ("Opp. to SPS & WT MTD") at 2-5.

As discussed below, the Court concludes that Plaintiff is judicially estopped from pursuing this action.  As such, the Court does not reach Defendants' remaining arguments.

**A. Plaintiff's Claims are Barred by Judicial Estoppel**

Defendants contend that Plaintiff's claims are barred by the doctrine of judicial estoppel.  TFS & NBH MTD at 6-7; SDS MTD at 10-11; WT & SPS MTD at 11-13.  In particular, Defendants argue that Plaintiff's failure to disclose any of the instant claims during her prior bankruptcy proceedings estops her from pursuing this litigation.  TFS & NBH MTD at 5-7; SDS MTD at 10-11; WT & SPS MTD at 12-13.  Plaintiff opposes these arguments by alleging that she was unaware of the present claims in 2017 and 2018 and that any omissions or errors in her bankruptcy schedules are simply mistakes.  Opp. to TFS & NBH MTD at 3; Opp. to SDS

11

United States District Court
Northern District of California

1    MTD at 2, 5.  Plaintiff also argues that she did not gain anything by including the disputed loans

2    as valid.  Opp. to SDS MTD at 5.

3        Judicial estoppel is an equitable doctrine that can be invoked by a court at its discretion.

4    *See New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001).  Judicial estoppel is designed to

5    "protect the integrity of the judicial process" and "prevent the improper use of judicial machinery"

6    by "prohibit[ing] a party from prevailing in one phase of a case on an argument and then relying

7    on a contradictory argument to prevail in another phase."  *Id*. at 749 (quoting *Pegram v. Herdrich*,

8    530 U.S. 211, 227 n. 8 (2000)).  The Ninth Circuit "invokes judicial estoppel not only to prevent a

9    party from gaining an advantage by taking inconsistent positions, but also because of general

10   considerations of the orderly administration of justice and regard for the dignity of judicial

11   proceedings, and to protect against a litigant playing fast and loose with the courts."  *Hamilton v.*

12   *State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir. 2001).  Federal law governs the

13   application of judicial estoppel in federal courts.  *See Milton H. Greene Archives, Inc. v. Marilyn*

14   *Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012).

15       "Although judicial estoppel is probably not reducible to any general formulation of

16   principle, . . . several factors typically inform the decision whether to apply the doctrine in a

17   particular case."  *Ah Quin v. Cty. of Kauai Dep't of Transp*., 733 F.3d 267, 270 (9th Cir. 2013)

18   (quoting *New Hampshire*, 532 U.S. at 750-51 (internal quotation marks omitted)).  These factors

19   include: (1) whether the party's later position was clearly inconsistent with its earlier position; (2)

20   whether the party had succeeded in persuading a court to accept its earlier position, such that

21   accepting an inconsistent position in a later proceeding would create the perception that the one

22   court or the other was misled; and (3) whether the party asserting an inconsistent position would

23   derive an unfair advantage or impose an unfair detriment on its opponent if not estopped.  *See New*

24   *Hampshire*, 532 U.S. at 750-51.  These factors are not to be taken as "inflexible prerequisites" or

25   as an "exhaustive formula for determining the applicability of judicial estoppel."  *Id.* at 751.

26   Indeed, other considerations may "inform the doctrine's application in specific factual contexts."

27   *Id*.

28       "In the bankruptcy context, a party is judicially estopped from asserting a cause of action

12

1    not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure

2    statements." *Benetatos v. Hellenic Republic*, 371 Fed. Appx. 770, 771 (9th Cir. 2010) (citing

3    *Hamilton*, 270 F.3d at 783). The application of judicial estoppel arising out of a bankruptcy

4    proceeding is important "to protect the integrity of the bankruptcy process," for "[t]he debtor, once

5    he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the

6    benefits derived by listing all his assets." *Hamilton*, 270 F.3d at 785. Additionally, because the

7    Bankruptcy Code imparts upon debtors a "continuing duty to disclose all pending and potential

8    claims," judicial estoppel bars a plaintiff from pursuing a claim that the plaintiff failed to disclose

9    in his bankruptcy proceeding, even when the claim arose after the bankruptcy petition was initially

10   filed. *Id*. at 784 ("Judicial estoppel will be imposed when the debtor has knowledge of enough

11   facts to know that a potential cause of action exists during the pendency of the bankruptcy but fails

12   to amend his schedules or disclosure statements to identify the cause of action as a contingent

13   asset"). Thus, "[i]f a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the

14   bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the

15   action." *Ah Quin*, 733 F.3d at 271.

16   After weighing the *New Hampshire* factors, the Court finds that Plaintiff is judicially

17   estopped from bringing her claims. First, the Court finds that Plaintiff asserted inconsistent

18   positions between her bankruptcies and the instant action. *See New Hampshire*, 532 U.S. at

19   750-51. The relevant events underlying this litigation occurred on or before January 6, 2017,

20   when the First Notice was recorded. TFS & NBH RJN Ex. 7. By this juncture, Plaintiff had

21   "knowledge of enough facts to know [of] a potential cause of action" against Defendants because

22   she was aware that foreclosure was imminent. Subsequent to the recording of the First Notice,

23   Plaintiff filed her Third and Fourth Bankruptcies, neither of which disclosed any claims against

24   any Defendant. TFS & NBH MTD at 6; TFS & NBH RJN Ex. 14; TFS & NBH RJN Ex. 18; WT

25   & SPS RJN Ex. I. In both filings, Plaintiff's schedules specifically asked if she had "[c]laims

26   against third parties, whether or not you have filed a lawsuit or made a demand for payment" or

27   "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor

28   and rights to set off claims." TFS & NBH RJN Ex. 14; TFS & NBH RJN Ex. 18; WT & SPS RJN

13

1    Ex. I. Plaintiff answered "No" to each of these questions. *Id.* In fact, Plaintiff's bankruptcy

2    petitions acknowledged that Defendants had claims to the Property and further acknowledged that

3    these claims were not disputed. TFS & NBH RJN Ex. 14; TFS & NBH RJN Ex. 18; WT & SPS

4    RJN Ex. I. The Court finds that Plaintiff's omission of the instant claims from her mandatory

5    bankruptcy filings was tantamount to a representation that no such claims existed.

6         Plaintiff argues that she was unaware of the present claims in 2017 and 2018. Opp. to

7    NBH & TFS MTD at 3; Opp. to SDS MTD at 2. The Court finds this argument wholly

8    unpersuasive, as Plaintiff's original and amended adversary complaints, both of which were filed

9    during the pendency of the Fourth Bankruptcy, allege causes of action identical to those pled here.

10   TFS & NBH RJN Ex. 23. Plaintiff was required to amend her bankruptcy schedules to reflect

11   these claims and failed to do so. The Court finds that Plaintiff has taken inconsistent positions.

12   *See Hamilton*, 270 F.3d at 784 (finding that the plaintiff "clearly asserted inconsistent positions"

13   when "[h]e failed to list his claims against [the defendant] as an asset on his bankruptcy schedules,

14   and then later sued [the defendant] on the same claims").

15        As for the second *New Hampshire* factor, the Court finds that the bankruptcy court

16   "accepted" Plaintiff's positions. *See New Hampshire*, 532 U.S. at 750-51. Plaintiff enjoyed the

17   benefit of automatic bankruptcy stays pursuant to 11 U.S.C. § 362(a), and bankruptcy stays are

18   sufficient to conclude that the bankruptcy court accepted Plaintiff's position. *See Sharp v.*

19   *Nationstar Mortgage, LLC*, No. 14-CV-00831-LHK, 2015 WL 106844, at *5 (N.D. Cal. Jan. 7,

20   2015) (finding automatic stay sufficient to meet judicial acceptance factor); *HPG Corp. v. Aurora*

21   *Loan Servs., LLC*, No. CIV. S–10–0374 FCD/KJM, 436 B.R. 569, 578 (E.D. Cal. Sept. 21, 2010)

22   (finding it sufficient for the application of judicial estoppel that plaintiffs received the benefit of

23   automatic stays, even though bankruptcy cases were dismissed). While all of Plaintiff's

24   bankruptcy proceedings were ultimately dismissed, Plaintiff enjoyed the benefit of the automatic

25   stays and failed to comply with the requirement of full, accurate disclosures.

26        Third, the Court finds that Plaintiff derived an unfair advantage by failing to disclose her

27   claims against Defendants. *See New Hampshire*, 532 U.S. at 750-51. When a plaintiff-debtor

28   asserts that the omission of a claim from a bankruptcy schedule is due to "inadvertence or

14

1    mistake" *and* reopens the prior bankruptcy proceedings to correct the mistake, the district court

2    should apply an "ordinary interpretation" of "inadvertence or mistake." *Ah Quin*, 733 F.3d at 277

3    (emphasis added). This "ordinary interpretation" requires:

4    　　[A]n inquiry into whether the plaintiff's bankruptcy filing was, in fact, inadvertent or
　　mistaken, as those terms are commonly understood . . . [by] determin[ing] whether

5    　　the omission occurred by accident or was made without intent to conceal. The
　　relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and

6    　　the universal motive to conceal a potential asset—though those are certainly factors.
　　The relevant inquiry is, more broadly, the plaintiff's subjective intent when filling

7    　　out and signing the bankruptcy schedules.

8    *Id*. at 266-67. In contrast, when "a plaintiff-debtor has *not* reopened bankruptcy proceedings, a

9    narrow exception for good faith" is appropriate. *Id*. at 272 (emphasis in original). Under this

10   narrow exception, the Ninth Circuit has found that it "makes sense to apply a presumption of

11   deliberate manipulation." *Id*. at 273 (citing *Eastman v. Union Pacific Railroad Company,* 493

12   F.3d 1151, 1159 (10th Cir. 2007) ("That he well knew of his pending lawsuit and simply did not

13   disclose it to the bankruptcy court is the only reasonable inference to be drawn from the

14   evidence")).

15   　　　Though Plaintiff argues that the omission of the instant claims in her bankruptcy schedules

16   was a simple mistake, Plaintiff did not reopen her bankruptcy proceedings to reflect the claims she

17   alleges in the instant action. The Court therefore applies the presumption of "deliberate

18   manipulation" as required by the Ninth Circuit. *See Ah Quin*, 733 F.3d at 272. Plaintiff is unable

19   to overcome this presumption. First, the judicially noticed record indicates that Plaintiff has twice

20   filed for bankruptcy the day before a trustee's sale is to take place to obtain an automatic stay.

21   TFS & NBH RJN Ex. 7 (date of trustee's sale listed as February 1, 2017); TFS & NBH RJN Ex.

22   14 (Third Bankruptcy filed on January 31, 2017); TFS & NBH RJN Ex. 8 (date of trustee's sale

23   listed as October 5, 2018); WT & SPS RJN Ex. F (same); TFS & NBH RJN Ex. 18 (Fourth

24   Bankruptcy filed on October 4, 2018); WT & SPS RJN Ex. I (same). Second, Defendants raised

25   their issues with Plaintiff's claims in the December 2018 adversary proceeding and the March

26   2019 state court action, thus giving Plaintiff multiple opportunities to reopen and correct her

27   bankruptcies. *See* TFS & NBH RJN Ex. 20; SDS RJN Ex. 30. Plaintiff's recurring failure to

28   disclose the instant claims against Defendants, despite multiple opportunities to do so, "deceived

15

1  the bankruptcy court and thus undermined the integrity of the bankruptcy process." *Sharp*, 2015

2  WL 106844, at \*5. Accordingly, the Court finds that Plaintiff fails to overcome the presumption

3  of deliberate manipulation.

4  Thus, having weighed the relevant factors, the Court concludes that Plaintiff is judicially

5  estopped from pursuing the instant claims.

6  **B.  Leave to Amend Would Be Futile**

7  Having found that Plaintiff is judicially estopped from pursuing the instant claims, the

8  Court must now consider whether to grant Plaintiff leave to amend. When determining whether to

9  grant leave to amend, Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give

10  leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A pro se litigant, in particular, should

11  generally be given leave to amend *unless it is clear that the complaint's deficiencies cannot be*

12  *cured by amendment*. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (emphasis

13  added). A court may also "exercise its discretion to deny leave to amend due to 'undue delay, bad

14  faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments

15  previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment.'"

16  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in

17  original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

18  Because the Court has determined that Plaintiff's claims are barred by judicial estoppel

19  (*see* Section V.A.), the claims cannot be fixed by amendment. More particularly, it is judicially-

20  noticed documents which confirm that: (1) Plaintiff asserted inconsistent positions between her

21  bankruptcies and the instant action; (2) the bankruptcy court "accepted" Plaintiff's positions; and

22  (3) Plaintiff derived an unfair advantage by failing to disclose her claims against Defendants. In

23  light of these documents, there is nothing more that Plaintiff could allege to restore viability to her

24  claims. Therefore, the Court **DENIES** leave to amend.

25  **VI.  MOTION TO RECORD A LIS PENDENS**

26  Plaintiff filed two documents, titled "Notice of Pendency of Action" and "Motion for

27  Order Granting Approval to Record Notice of Pendency of Action," seeking a lis pendens of the

28  Property pursuant to Cal. Code Civ. P. § 405.20. Dkts. 2, 3. Plaintiff did not provide any

16

1  argument in either document. *Id.* Defendants TFS and NBH oppose Plaintiff's motion and argue

2  that the motion is brought in bad faith and should be barred by judicial estoppel. Dkt. 11 at 2, 5.

3  In the alternative, Defendants ask the Court to require Plaintiff to post a bond in order to record

4  and maintain the lis pendens. *Id.* at 9.

5      In Plaintiff's reply, she argues: (1) that Cal. Code Civ. P. § 405.21 which allows an

6  attorney to file a lis pendens without court approval but not a pro se litigant, violates the Equal

7  Protection Clause; (2) judicial estoppel does not apply because the state court lawsuit involves

8  additional parties and claims; (3) judicial notice can only be taken of facts, not the truth or falsity

9  of the documents; (4) any misrepresentations in her bankruptcy filings are the fault of her

10  bankruptcy attorney; (5) Plaintiff has a First Amendment right to receive help from anyone

11  regarding this case; (6) Plaintiff is being subject to religious discrimination because she is

12  Christian and is therefore barred from being an attorney; and (7) Plaintiff is willing to post a bond

13  in the amount of $50 per day. Dkt. 16 at 1-16.

14      This Circuit has determined that it is inappropriate to raise an issue for the first time in a

15  reply brief. *See Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) (citing *Eberle v. City of

16  Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)). Accordingly, in the first instance, Plaintiff's

17  arguments are not properly before the Court. However, with deference to Plaintiff's pro se status,

18  the Court considers them now.

19      A lis pendens is a recorded document that gives constructive notice that an action has been

20  filed affecting title or right to possession of the real property described in the notice. *See* Cal.

21  Code Civ. P. § 405.24. A "real property claim" in this context refers to "the cause or causes of

22  action in a pleading which would, if meritorious, affect [ ] title to, or the right to possession of,

23  specific real property." Cal. Code Civ. P. § 405.4. "Once a lis pendens is filed, it clouds the title

24  and effectively prevents the property's transfer until the litigation is resolved or the lis pendens is

25  expunged." *BGJ Associates, LLC v. Superior Court,* 75 Cal. App. 4th 952, 967 (1999). A pro se

26  litigant needs court approval to file a lis pendens. *See Stowers v. Wells Fargo Bank*, *N.A.*, No.

27  3:13–CV–05426–RS, 2014 WL 1245070, at *11 (N.D. Cal. Mar. 25, 2014) (citing Cal. Code Civ.

28  P. § 405.21). In *Stowers*, the Court denied a plaintiff's request for a lis pendens after finding that

United States District Court
Northern District of California

all of the claims in the plaintiff's complaint failed. *See Stowers*, 2014 WL 1245070, at \*11. As discussed above, the Court has found that all of Plaintiff's claims are barred by the doctrine of judicial estoppel and cannot be cured by amendment. *See* Section V.A, B. As in *Stowers*, this Court concludes that Plaintiff has no active claims that could justify the recording of a lis pendens. Accordingly, the Court **DENIES** Plaintiff's motion.

## VII.    CONCLUSION

For the reasons set forth above, Defendants' respective motions to dismiss are **GRANTED** and Plaintiff's motion to record a lis pendens is **DENIED**. All claims alleged in the Complaint are **DISMISSED** without leave to amend. The Clerk should close the file.

**SO ORDERED.**

Dated: December 12, 2019

Susan van Kuul

SUSAN VAN KEULEN
United States Magistrate Judge